**Wayne SANDERS and Kathleen Sanders, Appellants**

v.

**TOTAL HEAT & AIR, INC., Appellee.**

No. 05–05–00524–CV.

Court of Appeals of Texas, Dallas.

March 31, 2008.

Thomas G. Yoxall, Locke Liddell & Sapp LLP, Dallas, TX, for Appellant.

Craig A. Bernstein, Dallas, TX, for Appellee.

Before Justices MOSELEY, FITZGERALD, and LANG.

## OPINION

Opinion by Justice MOSELEY.

This case arises out of a construction dispute involving a house. Appellee Total Heat & Air performed work on the home of appellants Wayne and Kathleen Sanders, pursuant to a proposal prepared by Total and signed and accepted by Mike Deaton, who is not a party to the case. The principle issue is whether Deaton signed the proposal in his own right as a general contractor or as an agent acting on behalf of the homeowners. The trial court found Deaton was acting as the homeowners' agent, meaning that Total's contract was with the homeowners, not Deaton. Because we conclude there is no evidence to support this finding, we reverse the trial court's judgment in part and render judgment that Total take nothing from the homeowners. Because we conclude the homeowners did not prove their counterclaim against Total as a matter of law, or show the trial court's failure to find the counterclaim was against the overwhelming weight of the evidence, we affirm the rest of the trial court's judgment.

## BACKGROUND

Total's president, Steve Lauten, met with Kathleen Sanders, Deaton, her architect, and others concerning the installation of a sophisticated geothermal heating and air conditioning system (HVAC) in the Sanderses' home. After these meetings, Total submitted a written proposal for the project. A few days later, Mike Deaton signed the proposal in a blank area underneath the word "Acceptance." Deaton is the principal of Mike Deaton Custom Remodeling; his signature did not indicate he was signing on anyone else's behalf.

Total installed the HVAC system over several months and delivered invoices billed to Deaton at his address in Euless. The invoices noted they were for work done at the Sanderses house in Highland Park. Deaton paid the invoices. However, Kathleen Sanders complained the system did not perform as it should have. Several attempts were made to resolve the complaints, to no avail.

After receiving payments of more than $181,000, four of Total's invoices remained unpaid, amounting to more than $24,000. Total sued the homeowners—not Deaton—for the balance of the unpaid invoices, asserting claims for breach of contract and for quantum meruit. It alleged that Deaton, in signing to accept Total's proposal, acted as the homeowners' agent.

The homeowners filed a sworn answer denying liability. Among other things, they contended there was no privity between them and Total because Total contracted with Deaton, their general contractor. They also filed a counterclaim for damages resulting from the system's failure to perform as expected and for expenses incurred in replacing several components in the system.

After a nonjury trial, the trial court rendered judgment in favor of Total on its

claims for the unpaid invoices and against the homeowners on their counterclaim. The trial court filed written findings of fact and conclusions of law in support of its judgment. Among other things, the trial court found that at all relevant times Deaton acted as the homeowners' agent.

## ISSUES PRESENTED

The homeowners' first and second issues challenge the legal and factual sufficiency of the evidence to support the trial court's judgment on Total's breach of contract (sworn account) and quantum meruit grounds.[1] They argue the evidence fails to prove privity of contract or that Total rendered valuable services to the homeowners under circumstances reasonably notifying them that Total expected payment directly from them. Their fourth issue challenges the trial court's take nothing judgment on their counterclaim. Our resolution of these issues disposes of this appeal and we do not address the homeowners' other issues. *See* TEX.R.APP. P. 47.1.

## STANDARD OF REVIEW

■■ Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict and may be reviewed for legal and factual sufficiency under the same standards. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996) (per curiam); *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *Ashcraft v. Lookadoo*, 952 S.W.2d 907, 910 (Tex.App.-Dallas 1997), *pet. denied*, 977 S.W.2d 562 (Tex.1998) (per curiam). To evaluate the legal sufficiency of the evidence to support a finding, we must "determine whether the proffered evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Transp. Ins. Co. v.*

*Moriel*, 879 S.W.2d 10, 25 (Tex.1994); *see also St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 519 (Tex.2002) (plurality op.). We view the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable fact-finder could, and disregarding contrary evidence unless a reasonable fact-finder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.2005).

■■ To evaluate the factual sufficiency of the evidence to support a finding, we consider all the evidence and set aside the finding only if the evidence supporting it is so weak or so against the overwhelming weight of the evidence that the finding is clearly wrong and unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986); *Dyson v. Olin Corp.*, 692 S.W.2d 456, 457 (Tex.1985).

## APPLICABLE LAW

■■ Privity is an essential element for recovery in any action based on contract; a breach of contract action normally requires privity between the injured party and the party sought to be held liable. *See Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 2008 WL 509385, at *4, —— S.W.3d ——, —— (Tex.App.-Dallas 2008, no pet. h.); *Jensen Const. Co. v. Dallas County*, 920 S.W.2d 761, 772 (Tex. App.-Dallas 1996, writ denied), *overruled in part by Travis County v. Pelzel & Assocs., Inc.*, 77 S.W.3d 246, 251 (Tex. 2002). The plaintiff in a breach of contract action has the burden to "prove that the defendant has obligated himself under the contract." *Basic Capital Mgmt., Inc.*, 2008 WL 509385 at *4, —— S.W.3d at —— (quoting *Miles v. Plumbing Servs. of Houston, Inc.*, 668 S.W.2d 509, 512 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd

---

1. Total alleged other causes of action against the Sanderses, but concedes on appeal the judgment is not supported by these theories. Thus, we do not address the Sanderses' third issue challenging these theories.

n.r.e.)). Absent an express agreement otherwise, in construction cases "a subcontractor is not in privity with the owner and must look to the general contractor, while the owner is liable only to the general contractor." *Jensen Const. Co.*, 920 S.W.2d at 772. Persons performing services or providing materials to a general contractor are paid by the general contractor, not the owner, even if "the work is done under the direction of and in accordance with the plans furnished by the owner." *City of Corpus Christi v. Acme Mech. Contractors, Inc.*, 736 S.W.2d 894, 898 (Tex.App.-Corpus Christi 1987, writ denied).

To establish privity between it and the homeowners, Total asserted and the trial court found, that Deaton acted as agent for the Sanderses rather than as general contractor. Texas law does not presume agency and the party alleging agency has the burden of proving it. *IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex.2007) (citing *Buchoz v. Klein*, 143 Tex. 284, 184 S.W.2d 271, 271 (1944)). An agent cannot bind a principal absent either actual or apparent authority. *Disney Enters., Inc. v. Esprit Fin., Inc.*, 981 S.W.2d 25, 30 (Tex.App.-San Antonio 1998, pet. dism'd w.o.j.).

Both actual and apparent authority are created through conduct of the principal communicated either to the agent (actual authority) or to a third party (apparent authority). *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex.2007). Actual authority denotes that authority the principal: (1) intentionally confers upon the agent; (2) intentionally allows the agent to believe he has; or (3) by want of ordinary care allows the agent to believe himself to possess. *See 2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex.App.-Houston [14th Dist.] 2006, no pet.). Apparent authority is based on estoppel arising from the conduct of the principal communicated to a third party. *Gaines*, 235 S.W.3d at 182. The alleged principal must either knowingly permit the purported agent to hold himself out as having authority or its conduct must show such lack of ordinary care as to clothe the purported agent with indicia of authority, leading a reasonably prudent person to believe the agent has authority to bind the principal. *Id.* Only the conduct of the principal is relevant to determining whether apparent authority exists. *Id.*; *NationsBank, N.A. v. Dilling*, 922 S.W.2d 950, 952–53 (Tex.1996) (per curiam). Thus, a court examines the conduct of the principal and the reasonableness of the third party's assumptions about authority. *Gaines*, 235 S.W.3d at 183.

Quantum meruit is an equitable remedy that allows a party to recover the reasonable value of services rendered and knowingly accepted. *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex.1990). Generally, a party may recover under quantum meruit only if no express contract covering the services or materials furnished exists. *Id.*; *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex. 1988). To recover under quantum meruit, a claimant must prove that: (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, used and enjoyed by him; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Vortt Exploration Co.*, 787 S.W.2d at 944; *Bashara v. Baptist Mem'l Hosp. Sys.*, 685 S.W.2d 307, 310 (Tex.1985).

## DISCUSSION

### A. Breach of Contract/Agency

The Sanderses' first issue challenges the legal and factual sufficiency of the evi-

dence to support the judgment on a breach of contract theory. In a reply point, Total contends the evidence is legally and factually sufficient to support its recovery on the "theory of sworn account."

A suit on sworn account is not an independent cause of action; it is a procedural rule for proof of certain types of contractual (account) claims.[2] *See* TEX.R. CIV. P. 185; *Rizk v. Financial Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex.1979) ("Rule 185 is not a rule of substantive law but is a rule of procedure with regard to evidence necessary to establish a prima facie right of recovery.").

However, the Sanderses filed a sworn denial and argued they were strangers to the account. Thus rule 185 does not make the invoices prima facie proof of a sworn account between Total and the Sanderses. TEX.R. CIV. P. 185. Additionally, although the their address is listed as the place where services were performed, the unpaid invoices were all billed to Deaton, not the Sanderses. *See Sundance Oil Co. v. Aztec Pipe & Supply Co., Inc.*, 576 S.W.2d 780, 780–81 (Tex.1978) (per curiam) (sworn account not prima facie proof of debt where plaintiff's invoices contained names of two different companies raising fact question as to whether defendant was party to transaction); *Airborne Freight Corp. v. CRB Marketing, Inc.*, 566 S.W.2d 573, 574 (Tex.1978) (per curiam) ("[A] sworn account is not prima facie evidence of the debt as against a stranger to the transaction."); *Enernational Corp. v. Exploitation Eng'rs, Inc.*, 705 S.W.2d 749, 750 (Tex.App.-Houston [1st Dist.] 1986, writ ref'd n.r.e.) (deficient sworn account not prima facie evidence of debt).

In support of Total's breach of contract theory, the trial court found that Deaton acted as the homeowners' agent and impliedly found he had authority to bind them to the contract. *See* TEX.R. CIV. P. 299. We consider whether there is any evidence to support an implied finding that Deaton had actual or apparent authority to bind the Sanderses to the contract with Total.

The parties' briefing does not distinguish between actual and apparent authority. Generally, however, Total argues the following evidence supports the finding that a contract existed between Total and the homeowners—signed on their behalf by Deaton as their agent. Lauten testified that Kathleen Sanders interviewed him, discussed costs, agreed on the price, and discussed what to do about extra work. He said Kathleen Sanders personally hired Total to do the work. Lauten also testified the homeowners paid over $181,000 to Total. He explained that Deaton made the payments to Total and Deaton was an agent acting on behalf of the homeowners. Lauten also testified the work described in the delinquent invoices was verbally authorized by Kathleen Sanders. Total asserts the invoices were not addressed only to Deaton's company, but also to the "Sanders Residence" with the homeowners' names and address. Lauten explained Kathleen Sanders told him to include Deaton on the invoices because "he was the general contractor and she wanted him kept in the loop." The invoices were sent to both Deaton and the homeowners. Lauten testified that he perceived the contract was with the homeowners and Deaton was only an agent for them. He also testified that Deaton told him the home-

**2.** The rule applies to an action or defense founded upon an "open account or other claim for goods, wares and merchandise, including any claim for a liquidated money demand based upon written contract or founded on business dealings between the parties, or is for personal service rendered, or labor done or labor or materials furnished." TEX.R. CIV. P. 185.

owners were responsible for paying Total's invoices. As detailed below, Lauten also responded that Kathleen Sanders told him Deaton was the homeowners' agent.

Both Kathleen Sanders and Deaton testified that Deaton was the general contractor on the project. Kathleen Sanders denied personally hiring Total, but admitted she was involved in selecting the HVAC contractor and authorized Deaton to hire Total.

### 1. Actual Authority

■■■ Actual authority is based on the acts of the principal communicated to the purported agent. *Gaines,* 235 S.W.3d at 182. None of the above evidence relates to communications between the homeowners and Deaton authorizing Deaton to sign and accept the proposal on their behalf. Even assuming Deaton was present when, according to Lauten, Kathleen Sanders personally hired Total to do the work, or when she told Lauten to include Deaton on the invoices because Deaton was the general contractor and she wanted him "in the loop," neither statement is evidence that the homeowners conferred authority on Deaton to execute the proposal as their agent.

In light of the undisputed evidence that both the homeowners and Deaton said their relationship was as owners and general contractor, and Deaton's execution of the proposal was without any indication he was acting in a representative capacity, evidence that Kathleen Sanders authorized Deaton to deal with Total is not evidence of a grant of actual authority to an agent as opposed to evidence of an owner consulting with a general contractor over selection of subcontractors.

We conclude any evidence of actual authority is so weak as to do no more than create a mere surmise or suspicion of its existence; the evidence amounts to no more than a scintilla and, in legal effect, is no evidence. *See Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex.1983); *see also City of Keller,* 168 S.W.3d at 810, 822.

### 2. Apparent Authority

■■■ We now turn to whether there is any evidence that the homeowners conferred apparent authority on Deaton to bind them to a contract with Total. In other words, we address whether there is any evidence that the homeowners either knowingly permitted Deaton to hold himself out as having authority to sign the document on their behalf, or that their conduct showed show such lack of ordinary care as to clothe Deaton with such indicia of authority as would lead a reasonably prudent person to believe Deaton had authority to bind the homeowners to the proposal. *See Gaines,* 235 S.W.3d at 182.

As noted above, Total relies on Lauten's testimony that Kathleen Sanders told him that Deaton was her agent. However, Lauten also testified immediately thereafter that Kathleen Sanders told him Deaton was the homeowners' general contractor.

The record shows the context of Lauten's testimony:

Q. [TOTAL'S COUNSEL:] And who told you that Mike Deaton was Plaintiff's [sic] agent?

A. Mrs. Sanders.

[SANDERS'S COUNSEL:] Object. It calls for a legal conclusion, Your Honor.

Q. [TOTAL'S COUNSEL:] What did Mrs. Deaton (sic) say to you?

THE COURT: Overruled. We've got to get the perceptions here. Go ahead.

Q. [TOTAL'S COUNSEL:] What did Mrs. Deaton (sic) say to you with regard to Mike Deaton's role in this project?

A. Mrs. Sanders?

Q. Yes.

A.   Mrs. Sanders said that Mike Deaton was the general contractor for the job, and that I should expect my payment from him; and that she would pay him for the services performed.

Q.   But who were—who hired you to do the work?

A.   Mrs. Sanders did.

Q.   Who was your contract with?

A.   Mrs. Sanders.

[SANDERS'S COUNSEL:]   Objection, calls for a legal conclusion, Your Honor.

THE COURT:   Overruled.

Q.   [TOTAL'S COUNSEL:]   Did she personally hire your company to do this work?

A.   Absolutely, yes.

Taken in context, Lauten's response to his counsel's leading question is no evidence that the homeowners conferred on Deaton apparent authority to execute the proposal on their behalf.  His statement is negated by his testimony, immediately thereafter and in response to more specific questioning, that Kathleen Sanders told him Deaton was the general contractor and to expect payment from him. *See City of Keller*, 168 S.W.3d at 811–12 (evidence must be reviewed in context; evidence cannot be taken out of context in a way that makes it seem to support a verdict when it never did).   Other than this exchange, there is no evidence the homeowners communicated or held out to Total that Deaton was their agent.   Rather, Lauten testified Kathleen Sanders told him to put Deaton's name on the invoices because Deaton "was the general contractor on the job, and she wanted him kept in the loop."   Even the testimony that Kathleen Sanders directed Deaton to contract with Total, is no evidence she communicated to Total that Deaton had apparent authority.   This evidence when considered with the undisputed facts that Deaton signed Total's proposal without indicating he was doing so in a representative capacity, Total billed Deaton for the work, and Total received payments for the work from Deaton, is no evidence that the homeowners conferred apparent authority on Deaton to bind them to a contract with Total.

There is no evidence in the record that the homeowners knowingly allowed Deaton to hold himself out as their agent.   Deaton's signature on the proposal does not purport to be that of an agent.   Lauten testified only that Deaton told him at some point the homeowners were responsible for paying the invoices, but even if this amounts to a holding out of authority to sign the contract on their behalf, there is no evidence the homeowners knowingly permitted it.   The record shows the homeowners told Total at least twice that Deaton was the general contractor on the job and to expect payment from him.   The homeowners' conduct does not show such a lack of ordinary care as to clothe Deaton with apparent authority. *See Gaines*, 235 S.W.3d at 182.

Total also relies on Lauten's testimony that he perceived Total's contract was with the homeowners and Deaton was acting only as their agent, and that Deaton told him the homeowners were responsible for paying Total's invoices.   However, only representations of the alleged principal will support apparent authority; representations by the alleged agent or speculations of a third party are not evidence of apparent authority. *See Gaines*, 235 S.W.3d at 183–84 ("Declarations of the alleged agent, without more, are incompetent to establish either the existence of the alleged agency or the scope of the alleged agent's authority."); *Gibson v. Bostick Roofing & Sheet Metal Co.*, 148 S.W.3d 482, 491 (Tex.App.-El Paso 2004, no pet.).   In light of Lauten's many years of experi-

ence in the construction industry, his perception that Deaton was an agent when Kathleen Sanders told him Deaton was her general contractor, is not reasonable. *See Gaines,* 235 S.W.3d at 183 (in determining an agent's apparent authority, court examines conduct of principal and "reasonableness of the third party's assumptions about authority").

After viewing all the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable fact-finder could not, *City of Keller,* 168 S.W.3d at 827, we conclude there is no evidence the homeowners conferred actual or apparent authority on Deaton to act as their agent in binding them to a contract with Total. *See Gaines,* 235 S.W.3d at 184; *2616 S. Loop L.L.C.,* 201 S.W.3d at 356. Absent actual or apparent authority, Deaton could not bind the homeowners to the contract and there is no privity between the homeowners and Total. We sustain the homeowners' first issue.

## B. Quantum Meruit

■ The homeowners' second issue challenges the legal and factual sufficiency of the evidence to support the judgment based on a quantum meruit theory. We focus on the fourth requirement for quantum meruit; whether Total performed additional services under circumstances reasonably notifying the homeowners that Total expected payment directly from them. *See Vortt Exploration Co.,* 787 S.W.2d at 944. The four unpaid invoices (for a greenhouse, pool options, changing filters, and hauling away dirt) were for the final work relating to the HVAC system on the homeowners' property. Each of the invoices was billed to Deaton at his address in Euless, but showed the work was done at the homeowners' address.

Total argues Kathleen Sanders personally approved the work on the unpaid invoices and was in meetings about upgrades, prices, and extra work. However, even if Kathleen Sanders approved this work, it is undisputed that Total invoiced Deaton for the work as it had done in the past and that Deaton had made all previous payments to Total. Further, Lauten admitted that Kathleen Sanders told him Deaton was the general contractor for the job and that he should expect payment from Deaton.

After viewing all the evidence in the light favorable to the finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable fact-finder could not, *City of Keller,* 168 S.W.3d at 827, we conclude there is no evidence Total reasonably notified the homeowners that it expected payment for the additional services directly from them rather than from Deaton. We sustain the homeowners' second issue.

## C. Counterclaim

■ The homeowners' fourth issue challenges the legal and factual sufficiency of the evidence to support the trial court's take nothing judgment on their counterclaims. They contend the trial court erred in rejecting their breach of warranty, DTPA, and negligent misrepresentation counterclaims. As the parties with the burden of proof on the counterclaims, the homeowners must show the evidence established all elements of their counterclaims as a matter of law, or that the failure to find those elements was so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241–42 (Tex.2001); *Cain,* 709 S.W.2d at 176. In a bench trial the court, as trier of fact, judges the witnesses, assigns the

weight to be given their testimony, and resolves any conflicts or inconsistencies in the testimony. *LaCroix v. Simpson*, 148 S.W.3d 731, 734 (Tex.App.-Dallas 2004, no pet.).

■ There is evidence in the record that the homeowners wanted a "quiet and gentle" system. The contract, however, does not use that phrase and contains no precise standard for determining what was meant by "quiet and gentle." Total put on evidence that it discussed providing the quietest equipment available from the manufacturers at the time. Shortly after moving in to the home, Kathleen Sanders complained that the system was noisy (like a train or airplane) and the airflow was strong enough to blow papers on a desk. Total addressed these complaints by re-configuring the settings of the "dip switches" in the system, which lowered the noise and airflow. In the summer, the homeowners complained of excessive condensation, and they presented evidence that resetting the dip switches caused the condensation. There was conflicting evidence whether the system was oversized. The homeowners eventually hired another company to review the system and later replaced several components of the system with newly available equipment.

Total presented evidence that it installed the system described in the contract and the system was installed according to industry standards. The system was inspected and certified by city inspectors. Total responded to the homeowners' complaints and adjusted the system to address those complaints. There was evidence that the recommendation to change out equipment was not due to poor workmanship by Total. Total also presented evidence that the new equipment the homeowners had installed was not available when Total did its work.

Viewing this and other evidence in the record in the light favorable to the trial court's findings, the evidence does not establish all elements of the homeowners' counterclaims as a matter of law. *See City of Keller*, 168 S.W.3d at 827. Further, considering all the evidence, the trial court's failure to find in favor of the homeowners' counterclaims is not so against the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. We reject the homeowners' fourth issue.

### CONCLUSION

We reverse that portion of the trial court's judgment awarding damages to Total and render judgment that Total take nothing against the homeowners. In all other respects, we affirm the trial court's judgment.