In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-08-00381-CV


____________________



DB STERLING INVESTMENTS, L.P., Appellant



V.



PRO M&E, INC. d/b/a JC STONEWALL CONSTRUCTORS, LP, Appellee






On Appeal from the 359th District Court


Montgomery County, Texas


Trial Cause No. 07-04-03760 CV






 MEMORANDUM OPINION


 The issue before us is whether there is legally sufficient evidence to prove that B&A
Development Group, L.P. ("B&A") possessed actual or apparent authority to bind DB
Sterling Investments, L.P. ("DB Sterling") to a construction contract between B&A and its
contractor, Pro M&E, Inc. (1) ("Pro M&E"). The trial court resolved the issue in Pro M&E's
favor, and awarded $80,738.97 in damages against DB Sterling; however, the trial court
denied Pro M&E's claim for attorney's fees. DB Sterling appeals from the judgment against
it, and Pro M&E, in a cross-appeal, appeals the trial court's denial of its claim for attorney's
fees. We reverse the trial court's judgment in part and render judgment that Pro M&E take
nothing from DB Sterling. We affirm the trial court's denial of Pro M&E's claim for
attorney's fees, and we remand the case to the trial court to allow it to consider DB Sterling's
claim for attorney's fees.

Background

 DB Sterling, a limited partnership, owned an office building in The Woodlands. 
Omero Del Papa, Inc. is DB Sterling's general partner. Omero Del Papa is the president of
Omero Del Papa, Inc. B&A leased a portion of the space in the office building. Henry
Altman was the president of B&A.

 In June 2006, Altman, on B&A's behalf, began negotiations with DB Sterling to lease
adjacent and unoccupied space in the office building. Altman asked Del Papa if B&A could
lease additional space from DB Sterling. Altman and Del Papa agreed on a price, and Del
Papa told Altman he would prepare a lease. Although DB Sterling gave B&A a written lease
containing all of the proposed terms for leasing the new space, B&A did not execute it. At
Altman's request, Del Papa gave Altman access to the space.

 Altman contacted Jerid Colwell, Pro M&E's president, to remodel the new space. 
Altman had previously used Pro M&E to renovate its current space in the office building;
B&A had paid Pro M&E for that work. Altman and Colwell agreed on the scope of work
and price for remodeling the additional space in the office building. Pro M&E, operating
under the assumption that B&A had leased the space, was given access to the space by Del
Papa, and subsequently completed its work in the new space in September 2006. When Pro
M&E sent invoices to B&A requesting payment, B&A did not pay them.

 After filing a mechanic's lien against B&A, Pro M&E sued B&A for breach of
contract and to foreclose its lien. DB Sterling notified Pro M&E that B&A never leased the
space that Pro M&E had remodeled, and DB Sterling demanded removal of the lien. Pro
M&E responded by amending its lien and in an amended lien affidavit asserted that Pro
M&E had performed the work "[p]ursuant to an oral agreement by and between [Pro M&E]
and DB Sterling Investments, L.P.'s agent, B&A Development Group. L.P." In April 2007,
Pro M&E filed suit against DB Sterling.

 After a bench trial, the trial court ordered that Pro M&E recover $80,738.97 from DB
Sterling. The damages were based on Pro M&E's unpaid invoices totaling $76,348.91
together with prejudgment interest of $4,390.06. The trial court also awarded Pro M&E the
remedy of foreclosure on its constitutional lien, but the trial court denied its request for
attorney's fees. Based on Pro M&E's request, the trial court made thirteen findings of fact
and thirteen conclusions of law.

Issues


 In five issues, DB Sterling appeals the trial court's judgment. Pro M&E, in a cross-appeal, appeals the trial court's denial of its attorney's fees.

 DB Sterling's first two issues challenge whether the evidence was legally sufficient
to support the trial court's conclusion that B&A acted as DB Sterling's agent. We construe
DB Sterling's arguments to include a challenge to the trial court's implied findings. (2) DB
Sterling's third issue contends that Pro M&E did not perform the work to remodel the office
space under the impression that B&A was acting as DB Sterling's agent. In issue four, DB
Sterling asserts that Pro M&E knew that B&A did not have a lease on the new space and
concludes Pro M&E did not exercise reasonable diligence to determine that B&A had
authority to act for DB Sterling. Finally, DB Sterling maintains that absent an agency
relationship, Pro M&E was not entitled to foreclose its mechanics lien or to recover pre-judgment and post-judgment interest.

Standard of Review

 Findings of fact in a nonjury trial have the same force and dignity as a jury's verdict
and thus, are subject to review for legal sufficiency under the same standards that we apply
to the review of evidence supporting a jury's answer. Ortiz v. Jones, 917 S.W.2d 770, 772
(Tex. 1996); Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994). The trial court entered
thirteen findings of fact, but none expressly state that DB Sterling gave B&A the express
right to contract for it, nor did the trial court expressly find that B&A reasonably believed
that it had authority to contract on DB Sterling's behalf. Additionally, the trial court did not
enter an express finding that DB Sterling cloaked B&A with the apparent authority to
contract with a third party on its behalf. Although the trial court did not make express
findings on the issue of B&A's actual or apparent authority to act on DB Sterling's behalf,
we imply the necessary findings that B&A had actual or apparent authority to act on behalf
of DB Sterling that are necessary to support the trial court's judgment. See Tex. R. Civ. P.
299. 

 Pro M&E, as the plaintiff, bore the burden of proving that B&A had actual or apparent
authority to act for DB Sterling. See IRA Res., Inc. v. Griego, 221 S.W.3d 592, 597 (Tex.
2007). Because Pro M&E bore the burden of proof, to prevail on its legal sufficiency issues,
DB Sterling must demonstrate that there is no evidence to support the adverse finding. See
Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983); Case Corp. v. Hi-Class Bus. Sys. of
Am., Inc., 184 S.W.3d 760, 769 (Tex. App.-Dallas 2005, no pet.). A legal sufficiency review
of a no-evidence point must credit the favorable evidence if a reasonable fact finder could
and disregard the contrary evidence unless a reasonable fact finder could not disregard it. 
City of Keller v. Wilson, 168 S.W.3d 802, 807, 827 (Tex. 2005). A reviewing court will
sustain a no-evidence point when: (1) the record discloses a complete absence of evidence
of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the
only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no
more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of the
vital fact. Marathon Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003); see also City of
Keller, 168 S.W.3d at 807. 

 We review a trial court's conclusions of law de novo and we review the trial court's
legal conclusions that are drawn from the facts to determine their correctness. BMC
Software Belg., N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). If we determine that
a conclusion of law is erroneous and resulted in an improper judgment, we may reverse and
render judgment for the appellant. See Sanders v. Total Heat & Air, Inc., 248 S.W.3d 907,
918 (Tex. App.-Dallas 2008, no pet.).

Applicable Law

 Texas law does not presume agency and the party asserting agency has the burden of
proving it. Griego, 221 S.W.3d at 597. Absent either actual or apparent authority, an agent
cannot bind a principal. Sanders, 248 S.W.3d at 913. 

 Actual and apparent authority are both created through conduct of the principal
communicated either to the agent (actual authority) or to a third party (apparent authority). 
Gaines v. Kelly, 235 S.W.3d 179, 182 (Tex. 2007). Actual authority, express or implied,
usually denotes that authority the principal (1) intentionally confers upon the agent, (2)
intentionally allows the agent to believe he possesses, or (3) by want of due care allows the
agent to believe he possesses. 2616 S. Loop L.L.C. v. Health Source Home Care, Inc., 201
S.W.3d 349, 356 (Tex. App.-Houston [14th Dist.] 2006, no pet.). Apparent authority, based
on estoppel, arises 

 "either from a principal knowingly permitting an agent to hold
[himself] out as having authority or by a principal's actions
which lack such ordinary care as to clothe an agent with the
indicia of authority, thus leading a reasonably prudent person to
believe that the agent has the authority [he] purports to
exercise." 

 

Gaines, 235 S.W.3d at 182 (quoting Baptist Mem. Hosp. Sys. v. Sampson, 969 S.W.2d 945,
948 (Tex. 1998)). 

 The essential elements required to establish apparent authority are: (1) a reasonable
belief in the agent's authority, (2) generated by some holding out or neglect of the principal,
and (3) a justifiable reliance on the authority. 2616 S. Loop, 201 S.W.3d at 356; see
generally Sampson, 969 S.W.2d at 947 n.2, 948-49 (listing the elements required to establish
ostensible agency, and noting that while courts use the terms ostensible agency, apparent
agency, apparent authority, and agency by estoppel interchangeably, that as a practical matter,
there are no distinctions between them). In determining whether apparent authority exists,
"[a] court may consider only the conduct of the principal leading a third party to believe that
the agent has authority in determining whether an agent has apparent authority." 2616 S.
Loop, 201 S.W.3d at 356. 

Analysis

 Although DB Sterling raises five separate issues in its brief, the resolution of all of
its issues relate to whether there was legally sufficient evidence to show that DB Sterling
gave B&A authority to enter into a construction contract on DB Sterling's behalf. We
construe its issues to challenge the trial court's conclusions of law and the implied findings
supporting those conclusions in three areas: (1) whether B&A had actual authority to act as
DB Sterling's agent in contracting with Pro M&E; (2) whether DB Sterling's actions led Pro
M&E to believe that B&A contracted with Pro M&E as DB Sterling's agent; and (3) in the
absence of an agency finding that is supported by some evidence, whether Pro M&E was
entitled to foreclose on its lien and to recover pre-judgment and post-judgment interest. 

 1. Actual Authority

 Actual authority is based on written or spoken words or the conduct of the principal
communicated to the purported agent. Walker Ins. Servs. v. Bottle Rock Power Corp., 108
S.W.3d 538, 549-50 (Tex. App.-Houston [14th Dist.] 2003, no pet.). An agency relationship
based on actual authority may be implied through the conduct either of the parties or from
the facts and circumstances surrounding the transaction in question. Id. at 550. 

 Del Papa, DB Sterling's president, testified that he never asked or authorized Altman
or B&A to serve as DB Sterling's agent with respect to Pro M&E's remodeling project. Del
Papa also testified that when the remodeling had been completed, DB Sterling was not sent
an invoice requesting payment and that prior to March 2007, no one had ever claimed that
DB Sterling was financially responsible for the work.

 Altman, B&A's president, testified that DB Sterling never authorized B&A to act as
DB Sterling's agent for any purpose. Altman explained that while Del Papa authorized 
B&A to enter the space and have it remodeled, Del Papa also told him that he would "have
to pay for everything and [be] responsible for everything[.]" Altman also stated that he never
told Pro M&E that B&A was acting as DB Sterling's agent, and further testified that he never
represented that DB Sterling would pay for the remodeling work. The evidence further
reflects that neither Del Papa nor DB Sterling were consulted about the scope of Pro M&E's
proposed work, and when the work was in progress, Altman did not make reports to Del Papa
or DB Sterling about the progress of the job.

 When the work was completed, Pro M&E sent Altman the invoices. The first of these
invoices, identified as a progress billing statement, is dated September 29, 2006, and was
billed to B&A. Altman testified that he never showed Del Papa or DB Sterling the invoice
for the work. Altman specifically testified that he was never requested to act as DB
Sterling's agent, and he also stated that he never thought that he or B&A had served as DB
Sterling's agent. 

 Colwell, Pro M&E's president, confirmed that neither Altman nor Del Papa ever told
him that Altman or B&A were serving as DB Sterling's agent. Colwell also testified that no
one ever told him that DB Sterling was going to pay for Pro M&E's work.

 Pro M&E contends that DB Sterling's consent to B&A's request to remodel space it
had not yet leased, together with allowing Pro M&E to remodel the unleased space, is
sufficient to prove that B&A had actual authority to contract with Pro M&E on DB Sterling's
behalf. However, actual authority is based on the acts of the principal communicated to the
agent; it is not based on assumptions made by a third-party. See Gaines, 235 S.W.3d at 182. 
The testimony concerning whether B&A had actual authority to enter a remodeling contract
as DB Sterling's agent showed that B&A had no actual authority to do so, and there was no
evidence to the contrary. We hold that no evidence supports the trial court's implied finding
that B&A possessed the actual authority to bind DB Sterling to Pro M&E's remodeling
contract. We sustain DB Sterling's first issue. 

 2. Apparent Authority

 In issues two, three and four, DB Sterling challenges the trial court's implied finding
that as a result of its actions, B&A acted with apparent authority to act for DB Sterling when
B&A engaged Pro M&E to remodel the space in the office building. Among its arguments,
DB Sterling asserts that "[t]here is no evidence that [Pro M&E] ever believed or relied on
such a belief that it was contracting with B&A as the agent for DB Sterling."

 Apparent authority arises when a principal intentionally or negligently induces parties
to believe that a person is the principal's agent though the principal has not conferred any
authority on that person. Thomas Reg'l Directory Co. v. Dragon Prods., Ltd., 196 S.W.3d
424, 427 (Tex. App.-Beaumont 2006, pet. denied). "Because apparent authority is based on
estoppel, the principal's conduct must be that which would lead a reasonably prudent person
to believe that authority exists." Id. at 428 (emphasis added). To establish apparent agency,
the Texas Supreme Court explained that


 the standard is that of a reasonably prudent person, using
diligence and discretion to ascertain the agent's authority. Thus,
to determine an agent's apparent authority we examine the
conduct of the principal and the reasonableness of the third
party's assumptions about authority.

 

Gaines, 235 S.W.3d at 182-83 (citations omitted).

 The testimony of Colwell, together with the exhibits introduced during trial, reflect
that Pro M&E contracted with B&A, completed the work under B&A's direction, and then
invoiced B&A for its work. When the invoices were not timely paid, Colwell demanded
payment from B&A; only after Colwell learned that B&A could not pay did Colwell and Pro
M&E pursue a claim for payment against DB Sterling. The evidence also reflects that in
January 2007, Colwell suggested that Altman sign a promissory note on B&A's behalf that
included Altman's personal guarantee for a debt in the approximate amount of $74,000. 
Additionally, the evidence reflects that in December 2006, Pro M&E filed a lien against
B&A for labor and materials supplied to B&A, and in February 2007, Pro M&E filed a
lawsuit alleging that B&A breached its contract with Pro M&E.

 In March 2006, Pro M&E learned that B&A did not have a lease on the space in
which it had performed its work. On March 16, 2007, Pro M&E sent DB Sterling a copy of
its amended lien affidavit in which it asserted that B&A acted as DB Sterling's agent. In
April 2007, Pro M&E filed a claim alleging that DB Sterling breached a contract for the
remodeling work Pro M&E performed.

 Colwell's own testimony clearly demonstrates that he did not rely on a belief that
B&A was acting as DB Sterling's agent when he agreed to the construction contract. 
Colwell testified:

 Q. When this work started, were you relying upon Mr.
Altman and B&A Development to pay the work - - to pay
for the work that you did?


 A. Yes.


 Q. Who else were you relying upon to pay for that work?


 A. No one.


 It appears the trial court relied in part on our opinion in Thomas Reg'l Directory Co.,
196 S.W.3d at 432, in concluding that B&A had acted as DB Sterling's agent. However,
Thomas is distinguishable. In Thomas, we relied on proof that Dragon had given its agent
the title of marketing manager, housed him in its offices, and authorized him to enter into
other contracts on its behalf as sufficient to support the jury's finding of apparent agency and
sufficient evidence to bind Dragon to an advertising contract advertising Dragon's products. 
Id. at 431-32. In contrast, there is no evidence in this case that DB Sterling led Colwell to
believe that B&A was acting as DB Sterling's agent in making the construction contract. 
Colwell's testimony establishes the contrary; B&A acted solely for itself. Only after Colwell
learned that B&A did not have a leasehold interest following B&A's failure to pay Pro
M&E's invoices, all of which occurred after the construction had been completed, did Pro
M&E assert an agency theory in an effort to obtain payment from DB Sterling. 

 We hold there is no evidence that DB Sterling cloaked B&A with apparent authority
to contract with others on its behalf. Sanders, 248 S.W.3d at 915-16, 918 (concluding no
evidence to support a finding of apparent authority despite homeowners interviewing
subcontractor, discussing costs and agreeing on price, and directing work, as well as
testimony from subcontractor that he perceived the contract to be with the homeowners based
in part on general contractor's statement that homeowners were responsible for the payment
of the work where the contract was signed by the general contractor and the subcontractor's
invoices were sent to the general contractor for payment); see also 2616 S. Loop, 201 S.W.3d
at 356. We sustain DB Sterling's issues two and three. We need not address issue four.

 Because there is no testimony that DB Sterling authorized B&A to act on its behalf
or that Pro M&E was misled by any of the acts of DB Sterling, we find there is no
evidentiary support for the trial court's implied findings that B&A possessed the actual or
apparent authority to contract for DB Sterling. See City of Keller, 168 S.W.3d at 807, 827;
see also Gaines, 235 S.W.3d at 184; Sanders, 248 S.W.3d at 917. Therefore, we sustain DB
Sterling's argument contained in issues one through three, and hold that there is no evidence
to show that B&A was given actual or apparent authority to act for DB Sterling. 

 3. Foreclosure of Lien and Recovery of Judgment Interest 

 In its last issue, DB Sterling challenges the trial court's conclusion that Pro M&E was
entitled to foreclose on its lien and to recover pre-judgment and post-judgment interest. DB
Sterling's argument is based on its contention that B&A was not its agent.

 A constitutional lien requires proof that the lienholder performed work under a
contract with the owner or the owner's agent. Gibson v. Bostic Roofing & Sheet Metal Co.,
148 S.W.3d 482, 494-95 (Tex. App.-El Paso 2004, no pet.); Wiseman Hardware Co. v. R.L.
King Constr. Co., 387 S.W.2d 79, 81 (Tex. Civ. App.-Dallas 1965, no writ); see also Tex.
Const. art. XVI, § 37. When the contract is not with the owner, in the absence of actual or
apparent authority, no privity of contract exists and a lien cannot be placed on the owner's
property. See Sanders, 248 S.W.3d at 912, 917; Gibson, 148 S.W.3d at 494.

 The evidence did not prove that B&A acted as DB Sterling's agent. Therefore, Pro
M&E was not entitled to the remedy of foreclosure on its lien claim. Finally, because Pro
M&E has not recovered a judgment in its favor, it is also not entitled to pre-judgment or post-judgment interest. We sustain DB Sterling's fifth issue.

Conclusions

 We reverse the judgment of the trial court in favor of Pro M&E, and render judgment
that Pro M&E recover nothing against DB Sterling. We further reverse and render judgment
that Pro M&E recover nothing on its lien claim, and we discharge any lien by Pro M&E
against DB Sterling. (3) We overrule Pro M&E's cross-point that asserts the trial court erred
in denying its claim for attorney's fees, and we affirm the trial court's judgment to the extent
it denied Pro M&E any recovery for attorney's fees. 

 Finally, DB Sterling requests that we remand the issue of its recovery of attorney's
fees to the trial court in order to consider DB Sterling's claim for its attorney's fees for
defending against Pro M&E's foreclosure claim. A court may award a party attorney's fees
for successfully defending against a lien. Tex. Prop. Code Ann. § 53.156 (Vernon 2007). 
DB Sterling filed a counterclaim in which it sought to recover its attorney's fees in the trial
court. Therefore, we remand the case to the trial court for the limited purpose of allowing
it to consider whether to award DB Sterling a reasonable attorney's fee award for those fees
related to its defense against Pro M&E's lien foreclosure claim. See Tex. R. App. P. 43.3(a).

 REVERSED AND RENDERED IN PART; AFFIRMED IN PART; REVERSED
AND REMANDED IN PART.


 _____________________________

 HOLLIS HORTON

 Justice



Submitted on May 29, 2009

Opinion Delivered July 16, 2009

Before Gaultney, Kreger, and Horton, JJ.
1. The Plaintiff's Original Petition is styled "PRO M&E, INC. D/B/A JC
STONEWALL CONSTRUCTORS, LP, VS. DB STERLING INVESTMENTS, L.P.,"and
the court rendered judgment for Pro M&E, Inc. d/b/a JC Stonewall Constructors, LP. While
corporations are allowed to sue under an assumed name, to simplify the analysis in this
opinion, we reference only Pro M&E, Inc. as it appears to be the party's actual legal name. 
See Tex. R. Civ. P. 28.
2. We liberally construe the briefing rules. Tex. R. App. P. 38.9. 
3. Although Pro M&E also pled a quantum meruit claim against DB Sterling, we need
not remand the case to allow the trial court to consider this claim for two reasons. First, the
trial court denied any relief on the quantum meruit claim. Second, the evidence in the record
fails to show that Pro M&E notified DB Sterling before completing its work that Pro M&E
expected to be paid for the work by DB Sterling, and proof of reasonable notification of the
expectation of payment is an element required to be proven to prevail on a quantum meruit
claim. See Vortt Exploration Co. v. Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990);
Sanders v. Total Heat & Air, Inc., 248 S.W.3d 907, 913, 917 (Tex. App.-Dallas 2008, no
pet.).