**REVERSE and REMAND in part; AFFIRM in part; and Opinion Filed
February 10, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00603-CV**

**WESTERN HEALTHCARE, LLC, Appellant**
**V.**
**GRETCHEN R. HERDA, N.P.; JOHN C. CUERCI, D.O.;
SANDEEP SAHOTA, M.D.; ROBERT C. SOLOMON, M.D.;
AND MICHAEL F. STALTERI, M.D., Appellees**

**On Appeal from the 44th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-20-05144**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Nowell
Opinion by Justice Pedersen, III

Western Healthcare, LLC (WHC) appeals the trial court's June 21, 2021 Final

Judgment ordering that appellees Gretchen R. Herda, N.P., John C. Cuerci, D.O.,

Sandeep Sahota, M.D., Robert C. Solomon, M.D. and Michael F. Stalteri, M.D.

(collectively, the Providers) recover from WHC on their claims that it failed to pay

them as it had agreed in their Independent Contractor Agreements.[1] The Final Judgment is rooted in the partial summary judgment—granted by a predecessor trial judge—on the Providers' motions for summary judgment. In this Court, WHC challenges the underlying summary judgment as well as the successor trial judge's interpretation of the summary judgment order. We agree that the Providers did not establish as a matter of law that they were entitled to judgment on the entirety of their claims below. Accordingly, we affirm the Final Judgment in part and reverse it in part. We remand this case for further proceedings.

## Background

The relationship between these parties is defined by their contracts. The claims urged by the Providers were resolved by partial summary judgment and a series of post-summary judgment rulings.

### The Contracts

WHC is a medical staffing company. It contracts with hospitals to provide them professional staff, and it contracts with medical providers to work in those hospitals. In this case, WHC contracted with Ellwood Medical Center Operations, LLC (Ellwood) to provide emergency medicine services and hospital medicine services at Ellwood's hospital in Ellwood City, Pennsylvania. The contracts with

---

[1] The Final Judgment's awards were specific to each plaintiff: Nurse Practitioner Herda to recover $19,200.00; Dr. Cuerci to recover $32,580.00; Dr. Sahota to recover $25,920.00; Dr. Solomon to recover $37,890.00; and Dr. Stalteri to recover $15,120.00.

Ellwood provided that its parent company, Americore Health, LLC (Americore), would guarantee Ellwood's performance and payment to WHC. WHC then contracted with the Providers to provide the emergency and hospital medicine services at Ellwood's hospital.

Towards the end of 2019, Ellwood fell behind in its payments to WHC. Then, in December 2019, the Pennsylvania State Department of Health shut down Ellwood's emergency room and inpatient services following what WHC has called "serious violations." The hospital was closed and has not reopened. Ellwood lost its license to operate in Pennsylvania. Weeks later, Ellwood and Americore filed for bankruptcy. WHC represents that it "is on the Creditor's Committee and remains in regular communication with the trustee about the status of the bankruptcies."

In April 2020, the Providers filed their joint original petition in this suit, pleading claims for suit on sworn account, breach of contract, and attorney's fees pursuant to section 38.001(7) and (8) of the Texas Civil Practice and Remedies Code.

*The Motions for Summary Judgment*

In November of that year, each of the Providers filed an individual Motion for Summary Judgment (collectively, the Motions), contending that the Providers were entitled to judgment as a matter of law on all three of their pleaded claims. In each case, the Motion relied upon:

(1) The affidavit of the plaintiff Provider, who testified to the elements of rule 185 to prove up a suit on an account and to the Provider's contract with WHC and the latter's failure to pay all the amounts due under the contract. Each affidavit attached:

> (a) Ellwood documents showing time worked;
> (b) a demand letter to WHC stating the amount owed; and
> (c) WHC discovery responses that admitted the validity of the Independent Contractor Agreement, the obligation to pay according to that agreement, and the fact that the Provider had performed the services required by the agreement.

(2) The affidavit of the Providers' counsel seeking $3807.50 in attorney's fees.

WHC filed its Opposition to each Provider's Motion. Factually, the Oppositions explained and evidenced—through documents and the Affidavit of Trey Davis, WHC's president and CEO—the circumstances involving Ellwood's shut-down and the bankruptcies filed by it and Americore. Legally, WHC relied upon a provision in each Provider's contract that addresses delays in performance under certain circumstances:

> Neither party hereto shall be liable in damages for any delay or default in performing its respective obligations under this AGREEMENT if such delay or default is caused by conditions beyond its control, including but not limited to, acts of God, governmental restrictions, strikes, fires, floods, or work stoppages. So long as any such delay or default continues, the party affected by conditions beyond its control shall keep the other party fully informed concerning the matters causing the delay or default and prospects of their ending.

WHC contended that Ellwood suffered an unexpected work stoppage when the Pennsylvania State Department of Health shut down its emergency room and inpatient services for serious violations and when it and its parent company declared

–4–

bankruptcy. It argued that it had not been paid for the work at issue in the lawsuit and that it "did not foresee this nonpayment, work stoppage, and subsequent bankruptcies, all of which were beyond its and plaintiffs' control."

In individual Replies, each Provider argued that WHC had not denied its claim on sworn account and that the delay provision cited by WHC did not apply to these claims (and the Davis Affidavit did not raise a genuine issue of material fact) because it was Ellwood and not WHC that had suffered the work stoppage.

The Honorable Mary Murphy, Senior Justice of this Court, sat in the trial court by assignment and ruled on the Motions. Her order granted the Motions in part and denied them in part, stating:

> This matter was before the Court this date on Plaintiffs' Motions for Summary Judgment. After considering the motions, responses, and replies, as well as the live pleadings on file, the undersigned finds the motions should be granted as to the claims based upon sworn account and the amounts owing on account are established as a matter of law; otherwise the motions should be denied.

IT IS SO ORDERED.

*Post-Summary Judgment Proceedings*

The parties did not interpret the summary judgment order in the same way. The Providers moved for entry of final judgment, taking the position that Justice Murphy had granted judgment on their claim for sworn account *and* determined the amounts owing on account as a matter of law. They argued that her interlocutory and partial summary judgment "will become final for purposes of appeal when Plaintiffs' remaining claims are resolved by dismissal."

WHC argued in its response and when the motion was heard that "[w]hile the amounts [owing on the accounts] have been established as a matter of law, the remaining elements have not." Specifically, WHC contended that Justice Murphy had rejected summary judgment on the issue of liability based on the contractual delay defense.

The Honorable Ashley Wysocki heard and decided the motion to enter judgment. She signed her Order Granting Judgment, which entered judgment on each Provider's claim for sworn accounts, but which found "that there are still claims pending that have not been disposed of prior to entry of this order." In response, the Providers non-suited without prejudice "all claims and causes of action and requests for relief against [WHC] that were not disposed of in the Order Granting Judgment." Judge Wysocki then signed the Final Judgment confirming her rulings in favor of the Providers.

This appeal followed.

## Discussion

WHC raises four issues in this Court:

**Issue One:** Whether the Judgment should be reversed because a genuine issue of material fact exists as to whether a delay provision in the independent contractor agreements on which Appellees' claims are based precludes Appellees from recovering damages from Appellant.

**Issue Two:** Whether the Judgment should be reversed because it is based entirely upon a "claim" for suit on a sworn account, which is not an independent cause of action upon which a judgment can be based.

**Issue Three:** In the alternative and to the extent necessary, whether the Judgment should be reversed because it is based upon Judge Wysocki's erroneous interpretation of Justice Murphy's prior order.

**Issue Four:** In the further alternative, to the extent Justice Murphy's order can be read to grant summary judgment as to Appellant's liability for Appellees' suit on a sworn account "claim," whether the Judgment should be reversed because that order is erroneous.

Although the statement of these alternative issues reflects a continuing uncertainty as to the intent of Justice Murphy's summary judgment order, our standard of review renders any uncertainty irrelevant. That standard is settled and guides our review of the Providers' traditional Motions. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). The movant has the burden to demonstrate that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49. We consider the evidence in the light most favorable to the nonmovant. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). We credit evidence favorable to the nonmovant if reasonable jurors could, and we disregard evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). Within the framework of these rules, we review the summary judgment de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010).

We have identified the parties' summary judgment evidence above. We conclude that the Providers' claims were for labor done, on which systematic records had been kept. *See* TEX. R. CIV. P. 185. And we conclude that each Provider's

–7–

affidavit established that the relevant claim was "within the knowledge of [the] affiant, just and true, that it is due, and that all just and lawful offsets, payments and credits have been allowed." *See id.* Accordingly, the Providers offered prima facie evidence of their claims on an account, and WHC would not be permitted to deny the claims unless it did so in writing under oath. *See id.*

WHC did not deny the amounts that the Providers swore they were owed. Indeed, it has repeated in this Court that it does not dispute the amounts charged by the Providers. We conclude, therefore, that WHC may not dispute the amounts charged by the Providers because it filed no sworn denial to those amounts. *See id.* Justice Murphy correctly granted summary judgment stating that "the amounts owing on account are established as a matter of law."

However, in the Affidavit of Trey Davis, WHC clearly *did* deny that it was liable to the Providers for the amounts charged, relying on the contractual delay provision as an affirmative defense. A defendant may rely on an affirmative defense in an action on a sworn account. *See Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 863 (Tex. 1979) ("affirmative defenses could be raised even in the absence of a verified denial under Rule 185"). WHC pleaded the delay defense and offered summary judgment evidence detailing Ellwood's—and therefore the Providers'—work stoppage, as well as the actions by governmental entities in Pennsylvania that closed the hospital and suspended Ellwood's license to operate, and the Ellwood/Americore bankruptcies. Davis testified that WHC "did not foresee

–8–

this nonpayment, work stoppage, and subsequent bankruptcies, all of which were beyond its and plaintiffs' control." WHC argued that its evidence raised a genuine issue of material fact on its contractual delay defense and negated the Providers' right to summary judgment on liability.[2]

In their summary judgment replies, the Providers argued that the contractual delay provision did not apply to their claims for two reasons. First they contended that because the work stoppage at issue affected Ellwood, rather than WHC, it should not defeat their claims. But the contractual provision does not specify that a particular employer must undergo a work stoppage to trigger its application; Ellwood's closure certainly stopped the Providers' ability to work at its hospital, which was the work bargained for in their contracts. WHC has also cited a number of governmental restrictions that could have implicated the delay provision. Second, the Providers argued that the delay provision applied only to claims for "damages," and that their rule 185 claim "for a liquidated money demand" is different from damages. We reject the distinction. Each of the Motions specifically sought an award of "[d]amages in the amount of" that provider's claim. Neither of the Providers'

---

[2] The parties also disagree as to the legal effect of a summary judgment on a claim for sworn account. "A suit on sworn account is not an independent cause of action; it is a procedural rule for proof of certain types of contractual (account) claims." *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 914 (Tex. App.—Dallas 2008, no pet.). The Providers' pleaded claims for sworn account and breach of contract are based on identical obligations and identical alleged breaches. Resolution of the Providers' claims under rule 185 in this case—whether in whole or in part—is equivalent proof and resolution of their breach of contract claims and would support summary judgment.

arguments below establish that the contractual delay defense could not apply in this case.

In this Court, the Providers argue that WHC waived its delay defense by not pleading it with sufficient specificity and by not asserting it until the summary judgment proceeding. We disagree. WHC's First Amended Answer, under the heading Affirmative Defenses and Allegations, pleaded: "[WHC] relies upon the provisions, definitions, and conditions of the subject contracts including, but not limited to Paragraph VII. Delay." We conclude that assertion was sufficient to give adequate and fair notice to the Providers that WHC intended to invoke the contractual delay defense. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 896–97 (Tex. 2000) ("Texas follows a 'fair notice' standard for pleading, which looks to whether the opposing party can ascertain from the pleading the nature and basic issues of the controversy and what testimony will be relevant."). Moreover, WHC did not merely plead the defense; it offered summary judgment evidence of facts indicating the delay was caused by events contemplated by the contractual provision (i.e., work stoppage and government regulation), that the events were unforeseen and beyond its control, and that it had kept the Providers informed concerning the circumstances of the delay. That evidence was timely filed before the summary judgment hearing, and Justice Murphy would have correctly considered it. *See* TEX. R. CIV. P. 166a(c). WHC did not waive its defense.

Viewing the evidence in the light most favorable to WHC, as we must under the applicable summary judgment standard of review, *Fielding*, 289 S.W.3d at 848, we conclude that it brought forward sufficient summary judgment evidence with respect to its contractual delay defense to raise a genuine issue of material fact precluding summary judgment on its liability to the Providers. *See Boudreau v. Fed. Tr. Bank*, 115 S.W.3d 740, 743 (Tex. App.—Dallas 2003, pet. denied) ("Once the plaintiff establishes its right to summary judgment as a matter of law, the burden then shifts to the defendant as non-movant to present evidence that raises a genuine issue of material fact, thereby precluding summary judgment."). Accordingly, the trial court erred—first in its Order Granting Judgment and then in its Final Judgment—by concluding that the Providers were entitled to final judgment in their favor on their claims for sworn accounts. We sustain WHC's first issue and need not address its remaining issues further.

We affirm the Final Judgment only insofar as it identifies the amounts owed to each Provider. In all other respects we reverse the Final Judgment, and we remand this case for further proceedings.

/Bill Pedersen, III/
BILL PEDERSEN, III
JUSTICE

210603F.P06



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WESTERN HEALTHCARE, LLC,
Appellant

No. 05-21-00603-CV     V.

GRETCHEN R. HERDA, N.P.;
JOHN C. CUERCI, D.O.; SANDEEP
SAHOTA, M.D.; ROBERT C.
SOLOMON, M.D.; AND MICHAEL
F. STALTERI, M.D., Appellees

On Appeal from the 44th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-20-05144.
Opinion delivered by Justice
Pedersen, III. Justices Partida-
Kipness and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **AFFIRM** the Final Judgment insofar as it identifies the amounts owed to each appellee. In all other respects, the trial court's Final Judgment is **REVERSED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

It is **ORDERED** that appellant Western Healthcare, LLC recover its costs of this appeal from appellees Gretchen R. Herda, N.P.; John C. Cuerci, D.O.; Sandeep Sahota, M.D.; Robert C. Solomon, M.D.; and Michael F. Stalteri, M.D.

Judgment entered February 10, 2023