**Affirmed; and Opinion Filed April 9, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-11-00650-CV

## TREVINO & ASSOCIATES MECHANICAL, L.P., AND MIKE TREVINO, SR., Appellants
## V.
## THE FROST NATIONAL BANK, Appellee

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-06459**

## OPINION

Before Justices Bridges, Lang and Richter[1]
Opinion by Justice Lang

Trevino & Associates Mechanical, L.P., (TAM) and Mike Trevino, Sr., a/k/a Miguel

Trevino, Sr., appeal the trial court's final judgment dismissing all of its counterclaims against

The Frost National Bank (Frost Bank). TAM raises two issues on appeal, claiming the trial court

erred when it (1) granted Frost Bank's motion for partial no-evidence summary judgment on its

counterclaims for breach of contract, promissory estoppel, negligent misrepresentation, fraud,

conversion, and wrongful setoff; and (2) granted Frost Bank's motion for partial traditional

summary judgment on its counterclaims as to damages. Trevino did not file a brief in this

appeal.

---

[1] The Hon. Martin E. Richter, retired Justice, sitting by assignment.

We affirm the trial court's final judgment as to Trevino because he did not file a brief on appeal. We conclude the trial court did not err when it granted Frost Bank's motion for partial no-evidence summary judgment on TAM's counterclaims. Based on this conclusion, we need not address TAM's claim that the trial court erred when it granted Frost Bank's motion for partial traditional summary judgment on TAM's counterclaims. The trial court's final judgment is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

TAM is a mechanical contractor that provides plumbing, heating, air conditioning, piping, and duct work. Frost Bank provided TAM with a line of credit to allow it to complete its construction projects and expand its business. In 2006, TAM and Frost Bank signed a business loan agreement for a $3.5 million line of credit that was secured by a commercial security agreement. The business loan agreement matured in 2008, but was renewed and extended to April 30, 2009. On May 12, 2009, Frost Bank sent TAM a notice stating that its line of credit had matured and the amount due was stated. That sum was $2,309,749.89.

On June 4, 2009, Trevino met with representatives of Frost Bank. At the conclusion of the meeting, Trevino believed that Frost Bank had orally renewed and extended the business loan agreement for three months or until July 30, 2009, and he had until June 30, 2009, to provide Frost Bank with a business plan. No written renewal and extension or other written agreement was signed by the parties at that time.

Subsequent to the above meeting, Frost Bank sent TAM a written notice dated June 19, 2009, stating the maturity date of the loan as June 30, 2009 and that TAM's line of credit was due on that date. Also, on June 19, 2009, Frost Bank setoff from TAM's account at Frost Bank $660,089.17, which constituted all of the funds in TAM's operating account. Frost Bank sent

2

TAM written notice of the setoff on June 22, 2009. That notice listed the maturity date of the loan as April 30, 2009. According to TAM, Frost Bank's actions caused TAM to lay off its employees and resulted in its inability to complete eight ongoing construction projects. Liberty Mutual was surety for those projects and incurred the cost of completion. As a result, Liberty Mutual sued TAM and obtained a judgment against it for $6,198,186.00 plus pre- and post-judgment interest.

Frost Bank sued TAM for breach of contract respecting the loan and Trevino on his personal guaranty. Frost Bank claimed it was owed $1,741,469.88, and sought pre- and post-judgment interest and its attorney's fees. It alleged that the loan agreement with TAM matured by its own terms on April 30, 2009, at which time the outstanding principal and interest became due and payable. TAM and Trevino answered the lawsuit generally denying the claims and asserting the affirmative defenses of estoppel, laches, accord and satisfaction, failure of consideration, waiver, failure to satisfy all conditions precedent to recovery, failure to mitigate damages, ratification, and payment and release. They also alleged counterclaims sounding in fraud, fraudulent inducement, negligent misrepresentation, breach of fiduciary duty, special relationship, breach of contract, promissory estoppel, conversion, and wrongful setoff, and sought damages and attorney's fees. All of the counterclaims were based on the allegation that Frost Bank orally renewed and extended the note.

Frost Bank moved for partial traditional summary judgment on its breach of contract claim against TAM and Trevino arguing the loan agreement with TAM and Trevino expired by its own terms. The record contains no response by TAM and Trevino to that motion. The trial court granted partial summary judgment on Frost Bank's breach of contract claim and awarded it

$1,758,322.48 in damages, pre-judgment interest, and attorney's fees. *See* TEX. R. CIV. P. 166a(e).

Frost Bank answered the counterclaims of TAM and Trevinio, generally denying the counterclaims, asserting the affirmative defense of failure of consideration, and seeking an offset and reduction of any amount awarded to TAM from the amount already awarded to Frost Bank on its breach of contract claim. Then, Frost Bank filed a series of motions for partial summary judgment, both traditional and no-evidence.

First, Frost Bank filed a motion for partial traditional and no-evidence summary judgment on TAM and Trevino's counterclaims for breach of fiduciary duty and special relationship. There is no response by either TAM or Trevino in the record on appeal. The trial court granted that motion and ordered that TAM and Trevino take-nothing on those counterclaims.

Second, Frost Bank filed a motion for partial traditional and no-evidence summary judgment on all of Trevino's remaining counterclaims. There is no response to this motion by Trevino in the record on appeal. The trial court granted that motion and ordered that Trevino take-nothing on his counterclaims.

Third, Frost Bank filed a motion for partial traditional and no-evidence summary judgment on TAM's counterclaims for fraud, fraudulent inducement, negligent misrepresentation, breach of contract, promissory estoppel, conversion, and wrongful setoff. This motion for partial traditional summary judgment asserted that TAM's counterclaims lacked merit, as a matter of law, because Frost Bank did not cause TAM's alleged damages since the evidence shows that TAM's liabilities exceeded its assets before Frost Bank setoff TAM's operating account.

4

TAM filed a response to Frost Bank's final motion for partial traditional and no-evidence summary judgment, claiming that in its response it raised an issue of material fact as to its counterclaims for negligent misrepresentation, fraud, breach of contract, promissory estoppel, conversion, wrongful setoff, and damages. TAM did not respond to Frost Bank's motion for partial no-evidence summary judgment on its counterclaim for fraudulent inducement. Also, TAM did not file a motion asking the trial court to reconsider the prior partial traditional summary judgment rendered in favor of Frost Bank on its breach of contract claim. However, TAM filed a motion to strike the affidavit of Frost Bank's senior vice president, which was filed in support of its motions for partial traditional and no-evidence summary judgment on TAM's counterclaims. There is no ruling in the record on that motion.

Frost Bank filed a reply to TAM's summary judgment response that included an objection to some of TAM's summary judgment evidence. Specifically, Frost Bank objected to the judgment, original petition, and motion for summary judgment filed in the suit by Liberty Mutual against TAM as being unauthenticated hearsay. The record does not show the trial court ruled on Frost Bank's objection. In the trial court's final judgment, rendered in favor of Frost Bank, the trial court stated it granted Frost Bank's motion for partial traditional and no-evidence summary judgment on TAM's counterclaims and incorporated its previous, partial summary judgment orders.

In its brief on appeal, TAM specifically challenges only the portion of the trial court's final judgment that granted Frost Bank's motion for partial no-evidence summary judgment on TAM's counterclaims for breach of contract, promissory estoppel, negligent misrepresentation, fraud, conversion, and wrongful setoff, and partial traditional motion for summary judgment as to damages. TAM does not challenge the trial court's partial traditional summary judgment on

Frost Bank's breach of contract claim or on TAM's counterclaims for breach of fiduciary duty, special relationship, and fraudulent inducement.

## II.  JUDGMENT AGAINST TREVINO

TAM and Trevino filed a joint notice of appeal of the trial court's final judgment. However, Trevino did not file a brief on appeal and TAM's brief does not state or otherwise indicate that it was filed on behalf of Trevino.  Accordingly, we affirm the trial court's final judgment as to Trevino.

## III.  SUMMARY JUDGMENT ON TAM'S COUNTERCLAIMS

In issue one, TAM argues the trial court erred when it granted Frost Bank's motion for partial no-evidence summary judgment on its counterclaims for breach of contract, negligent misrepresentation, fraud, promissory estoppel, conversion, and wrongful setoff.

### A.  Breach of Contract

TAM argues on appeal that its counterclaim for breach of contract was supported by summary judgment evidence that shows Frost Bank orally renewed and extended the loan agreement, agreed not to setoff TAM's operating account, and agreed to negotiate in good faith while TAM prepared its business plan.  In its appellate brief, Frost Bank asserts "[TAM] does not challenge the contract documents or the money judgment in favor of [Frost Bank].  The express language of those uncontested contracts controls the issues on [TAM's] counterclaims and is dispositive of all issues in the case."  Further, Frost Bank responds that TAM cannot show an oral contract was formed at the June 4, 2009 meeting and therefore, there is no breach.  Also, Frost Bank argues that TAM failed to produce any evidence demonstrating it performed or was excused from performing under the alleged oral contract because it admits that it never submitted the required business plan.

6

### 1. Standard of Review

An appellant must attack every ground relied on for which summary judgment could have been granted in order to obtain a reversal. *See Malooly Bros., Inc. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); *Worldwide Asset Purchasing, LLC v. Rent-A-Center E., Inc.*, 290 S.W.3d 554, 569 (Tex. App.–Dallas 2009, no pet.). If an appellant fails to challenge one of the grounds for summary judgment, an appellate court may affirm the summary judgment on that ground alone. *See Worldwide Asset*, 290 S.W.3d at 569.

### 2. Applicable Law

The issues determined on a motion for partial summary judgment are final, even though the judgment is interlocutory. *Martin v. First Republic Bank, Fort Worth, N.S.*, 799 S.W.2d 482, 488 (Tex. App.—Fort Worth 1990, writ denied); *Linder v. Valero Transmission Co.*, 736 S.W.2d 807, 810 (Tex. App.—Corpus Christi 1987, writ ref'd n.r.e.) (clear purpose of former version of Texas Rule of Civil Procedure 166a(e)[2] is to make issues determined in motion for summary judgment final); *Tex. United Ins. Co. v. Burt Ford Enters., Inc.*, 703 S.W.2d 828, 833 (Tex. App.—Tyler 1986, no writ) (discussing former version of rule 166a(e)); *Cunningham v. Eastham*, 465 S.W.2d 189, 192 (Tex. Civ. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.) (same); *City of Houston v. Socony Mobil Oil Co.*, 421 S.W.2d 427, 430 (Tex. Civ. App.—Houston [1st Dist.] 1967, writ ref'd n.r.e.) (same).[3] After an interlocutory, partial summary

---

[2]   Effective September 1, 1997, rule 166a(e) was amended by "making minor changes in the wording of that subsection. This change was intended simply as a clarification of the existing rule." Timothy Patton, *Summary Judgments in Texas: Practice Procedure and Review* § 3.03[1] (3d ed. 2012).

[3]   *See also* Timothy Patton, *Summary Judgments in Texas: Practice Procedure and Review* § 3.03[2] (issues determined by partial summary judgment are final even though judgment is interlocutory) (3d ed. 2012); 3 Roy W. McDonald & Elaine A. Grafton Carlson, *Texas Civil Practice* § 18:4 (2d ed. 2000) ("A summary judgment order that does not purport to dispose of all parties and all issues is interlocutory even though [] rule [166a(e)] anticipates that ordinarily a ruling made under it shall be conclusive at the trial with respect to the facts that it specifies.").

judgment is granted, the issues it decides cannot be litigated further, unless the trial court sets the partial summary judgment aside or the summary judgment is reversed on appeal. *Martin*, 799 S.W.2d at 488–89; *Linder*, 736 S.W.2d at 810 (issues decided cannot be further litigated unless interlocutory summary judgment set aside by trial court or reversed on appeal); *Cunningham*, 465 S.W.2d at 192 (same); *Socony*, 421 S.W.2d at 430 (same).[4]

### 3. Application of the Law to the Facts

At this juncture, we review whether TAM has challenged all grounds that could support the trial court's final judgment that granted partial no-evidence summary judgment on TAM's breach of contract counterclaim. As indicated above, Frost Bank moved for partial traditional summary judgment on its breach of contract claim against TAM arguing it was an "undisputed" material fact that "the loan agreement matured by its own terms on April 30, 2009, at which time all outstanding principal and interest became fully due and payable." The record contains no response by TAM and Trevino to that motion. The trial court granted partial traditional summary judgment on Frost Bank's breach of contract claim and awarded it $1,758,322.48 in damages. The partial traditional summary judgment expressly found, inter alia, both Trevino and TAM were "jointly and severally" liable for damages awarded and Frost Bank's "lien interest in [TAM's] business equipment and accounts receivable are hereby foreclosed." As a matter of law, the partial traditional summary judgment on Frost Bank's breach of contract claim fixed TAM's liability. *See Tex. United*, 703 S.W.2d at 833; *Socony*, 421 S.W.2d at 430. The issues decided by an interlocutory, partial summary judgment cannot be relitigated further, unless the trial court sets that order aside. *See Martin*, 799 S.W.2d at 488–89; *Linder*, 736 S.W.2d at 810; *Cunningham*, 465 S.W.2d at 192; *Socony*, 421 S.W.2d at 430.

---

[4] *See also* Patton, § 3.03[2]; 3 McDonald & Carlson, § 18:4 (2d ed. Supp. 2012).

Then, Frost Bank sought partial no-evidence summary judgment on TAM's remaining counterclaims, including its counterclaim for breach of contract. In an attempt to revisit the facts that were established, as a matter of law, by the trial court's partial summary judgment order on Frost Bank's breach of contract claim, TAM responded to the motion for partial no-evidence summary judgment on its breach of contract counterclaim by attaching evidence it claimed demonstrated the loan agreement was orally renewed and extended. TAM did not file a motion to reconsider, modify, or set aside the partial traditional summary judgment on Frost Bank's breach of contract claim. There is nothing in the record indicating the trial court set aside the partial traditional summary judgment order on Frost Bank's breach of contract claim. Further, the trial court granted Frost Bank's motion for partial no-evidence summary judgment on TAM's breach of contract counterclaim. That is consistent with the trial court's earlier partial traditional summary judgment rendered on Frost Bank's breach of contract claim.

On appeal, TAM does not challenge the trial court's partial traditional summary judgment on Frost Bank's breach of contract claim. *See, e.g., Socony*, 421 S.W.2d at 430 (when appellant did not raise as error the trial court's interlocutory, partial summary judgment, the propriety of that partial summary judgment is not considered on appeal). Applying the appropriate standard of review, we must conclude the trial court did not err when it granted Frost Bank's motion for partial no-evidence summary judgment on TAM's breach of contract counterclaim because TAM has not challenged every possible ground for the trial court's summary judgment. *See Malooly*, 461 S.W.2d at 121; *Worldwide Asset*, 290 S.W.3d at 569.

### B. Negligent Misrepresentation and Fraud

Where, as here, a plaintiff seeks "to recover [for negligent misrepresentation and fraud] what [it] would have gained had the [alleged oral agreement] been performed, the gist of [the]

9

cause of action is the breach of the alleged oral promise." *See 1001 McKinney Ltd v. Credit Suisse First Boston Mortg. Capital*, 192 S.W.3d 20, 29 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Because TAM's negligent misrepresentation and fraud counterclaims arise from the alleged oral agreement to extend the loan, based on our resolution of TAM's breach of contract counterclaim, we conclude the trial court did not err when it granted Frost Bank's motion for partial no-evidence summary judgment on those counterclaims. *See 1001 McKinney*, 192 S.W.3d at 29.

## C. Promissory Estoppel

TAM argues that its counterclaim for promissory estoppel was supported by summary judgment evidence. Frost Bank does not specifically respond on appeal to TAM's argument relating to the partial no-evidence summary judgment on its promissory estoppel counterclaim. However, in its motion for partial no-evidence summary judgment, Frost Bank argued that TAM could produce no evidence supporting any element of its promissory estoppel counterclaim. In its reply to TAM's response to its motion for partial no-evidence summary judgment, Frost Bank argued TAM failed to raise any evidence showing that it made any representation on which TAM justifiably relied or prove causation.

### 1. Applicable Law

Generally, promissory estoppel is a viable alternative to breach of contract. *Allied Vista, Inc. v. Holt*, 987 S.W.2d 138, 141 (Tex. App.—Houston [14th Dist.] 1999, pet. denied). Promissory estoppel is not applicable to a promise covered by a valid contract between the parties. However, promissory estoppel will apply to a promise outside a contract. *See Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 899 (Tex. App.—San Antonio 2002, no pet.). The elements of a promissory estoppel claim are (1) a promise, (2) foreseeability of reliance thereon by the

promisor, and (3) substantial detrimental reliance by the promisee. *See English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Fretz Constr. Co. v. S. Nat'l Bank of Houston*, 626 S.W.2d 478, 480 (Tex. 1981). To show detrimental reliance, the plaintiff must demonstrate that he materially changed his position in reliance on the promise. See *English*, 660 S.W.2d at 524 (finding no promissory estoppel when plaintiff could not show he would not have taken his detrimental actions if defendant had not made promise); *Sandel v. ATP Oil & Gas Corp.*, 243 S.W.3d 749, 753 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (demonstrating failure to seek another job was insufficient to show detrimental reliance, employee required to show that but for stock option letter, he would have stopped working for employer).

## 2. Application of the Law to the Facts

In TAM's second amended original answer and counterclaims, TAM alleged it "reasonably and substantially relied, to its detriment, on Frost [Bank's] promises—which is evidenced by TAM's substantial cash deposit made in June 2009. Because of the nature of Frost [Bank's] promise, TAM's reliance was both reasonable and substantial." In its response to Frost Bank's motion for partial no-evidence summary judgment, TAM argued it reasonably and substantially relied on Frost Bank's promise to its detriment as follows:

> Because of Frost [Bank's] promises, TAM continued its banking relationship with Frost [Bank] and continued to deposit money into its Frost [Bank] operating account. Acting in good faith, TAM was preparing its business proposal, but before it had a chance to present it to Frost [Bank], Frost [Bank] setoff its account. As a result, TAM never received the retainage it planned to use to pay down its line of credit and it was forced to cease operations. In addition, Frost [Bank's] representations prevented TAM from seeking additional funding from another source to avoid being put out of business.

(Citations omitted). In support of its argument that it deposited money into its operating account in June 2009, TAM referred the trial court to Trevino's affidavit, which states, "[TAM] further provided assurances to Frost [Bank] that its credit balance would be paid down from its accounts

11

receivables and outstanding retainage and that TAM would continue its banking relationship with Frost [Bank]," and a bank statement for TAM's operating account showing that TAM made several deposits in June 2009. TAM did not cite any summary judgment testimony or evidence to support its claim that Frost Bank's promises prevented TAM from seeking funding from another source or that he continued to make deposits at Frost Bank in June 2009 because of the alleged oral representation.

In TAM's brief on appeal, TAM argued it raised evidence of a fact issue on its promissory estoppel counterclaim as to the element of reliance, claiming:

> The record revealed that Trevino testified by deposition and affidavit that because of Frost [Bank's] promises, TAM continued its banking relationship with Frost [Bank] and continued to deposit money into its Frost [Bank] operating account. Acting in good faith, TAM was preparing its business proposal, but before it had a chance to present it to Frost [Bank], Frost [Bank] setoff its account. There was no evidence in the record to suggest TAM should not have relied on the promises. Instead, the parties' prior actions lent credibility to Frost [Bank's] words at that time.

(Record citations omitted). To support this argument, TAM cites to its summary judgment evidence of a bank statement for TAM's operating account that shows TAM made several deposits in June 2009.

In summary, TAM contends that it detrimentally relied on Frost Bank's promise to renew and extend the loan agreement by continuing to deposit money in its operating account, which was also with Frost Bank. However, even had we concluded Frost Bank did orally promise to renew and extend the loan agreement, TAM falls short of its burden because it offered no evidence of detrimental reliance. Continuing to deposit money in its operating account does not amount to a material change in TAM's position as a result of Frost Bank's promise. *See English*, 660 S.W.2d at 524 (finding no promissory estoppel when plaintiff could not show he would not have taken his detrimental actions if defendant had not made promise); *Sandel*, 243 S.W.3d at 753 (demonstrating failure to seek another job was insufficient to show detrimental reliance,

12

employee required to show that but for stock option letter, he would have stopped working for employer). Also, TAM argues "There was no evidence in the record to suggest TAM should not have relied on the promises." However, to preclude a no-evidence summary judgment, it was TAM's burden to produce evidence raising a fact issue as to each element of each claim in which no-evidence summary judgment was sought. *See* TEX. R. CIV. P. 166a(i); *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 375 (Tex. App.—Dallas 2009, pet. denied); *RTLC AG Prods., Inc. v. Treatment Equip. Co.*, 195 S.W.3d 824, 833 (Tex. App.—Dallas 2006, no pet.). We conclude that TAM did not meet its burden to preclude a partial no-evidence summary judgment on its promissory estoppel counterclaim.

### D. Conversion

Next, TAM argues the trial court erred when it granted Frost Bank's motion for partial no-evidence summary judgment on TAM's counterclaim for conversion. Specifically, TAM claims that Frost Bank's setoff of the funds in TAM's operating account constituted conversion. To establish a claim for conversion, a plaintiff must prove that: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Tex. Integrated*, 300 S.W.3d at 365–66. TAM's claim for conversion is premised on one of its other counterclaims surviving Frost Bank's motion for partial no-evidence summary judgment. Based on our resolution of TAM's counterclaims for breach of contract, negligent misrepresentation, fraud, and promissory estoppel, we need not address TAM's argument that it raised an issue of fact precluding partial no-evidence summary judgment on its counterclaim for conversion.

### E. Wrongful Setoff

Finally, TAM contends the trial court erred when it granted Frost Bank's motion for partial no-evidence summary judgment on its counterclaim for wrongful setoff because it produced evidence raising a fact issue. Specifically, TAM claims its summary judgment

evidence shows that Frost Bank setoff its account before the loan agreement matured and it did not give TAM contemporaneous notice of the setoff.

The relationship of a bank to a general depositor is contractual, that of debtor-creditor arising from the depository contract. *See Upper Valley Aviation v. Mercantile Nat'l Bank*, 656 S.W.2d 952, 955 (Tex. App.—Dallas 1983, writ ref'd n.r.e.); *Am. Bank of Waco v. Waco Airmotive, Inc.*, 818 S.W.2d 163, 170 (Tex. App.—Waco 1991, writ denied). The nature of the relationship authorizes a bank to offset deposits against a debt of equal amount owed the bank by that depositor, assuming proof of the amount of the debt owed. *See Am. Bank of Waco*, 818 S.W.2d at 170. An offset is not authorized unless there is a mature or past-due debt owed by the depositor to the bank. *See Am. Bank of Waco*, 818 S.W.2d at 170; *see also Bandy v. First State Bank, Overton, Tex.*, 835 S.W.2d 609, 619 (Tex. 1992) (discussing claim for wrongful setoff in equity). A depositor's remedy for the wrongful offset of a general account is an action for return of the funds for breach of the depository contract. *See Upper Valley Aviation*, 656 S.W.2d at 955; *Am. Bank of Waco*, 818 S.W.2d at 170.

TAM does not dispute that Frost Bank had a contractual right of setoff. However, TAM's claim for wrongful setoff is premised on the viability of one of its other counterclaims. Based on our resolution of the no-evidence motion for partial summary judgment as to TAM's counterclaims for breach of contract, negligent misrepresentation, fraud, and promissory estoppel, we need not address TAM's argument that it raised an issue of fact precluding no-evidence summary judgment on its counterclaim for wrongful setoff.

### F.  No-Evidence Summary Judgment Conclusion

We conclude the trial court did not err when it granted Frost Bank's motion for partial no-evidence summary judgment on TAM's counterclaims for breach of contract, negligent misrepresentation, fraud, promissory estoppel, conversion, and wrongful setoff. Issue one is decided against TAM.

### IV.  TRADITIONAL SUMMARY JUDGMENT ON TAM'S COUNTERCLAIMS

In issue two, TAM argues the trial court erred when it granted Frost Bank's motion for partial traditional summary judgment as to damages. Based on our resolution of issue one, we need not address this issue.

## V. CONCLUSIONS

The trial court's final judgment is affirmed as to Trevino because he did not file a brief on appeal. Also, the trial court did not err when it granted partial no-evidence summary judgment on TAM's counterclaims. Based on this conclusion, we need not address TAM's claim that the trial court erred when it granted frost Bank's motion for partial traditional summary judgment.

The trial court's final judgment is affirmed as to TAM.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

110650F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

TREVINO & ASSOCIATES
MECHANICAL, L.P., AND MIKE
TREVINO, SR., Appellants

No. 05-11-00650-CV        V.

THE FROST NATIONAL BANK, Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-06459.
Opinion delivered by Justice Lang.   Justices
Bridges and Richter participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee THE FROST NATIONAL BANK recover its costs of this appeal from appellants TREVINO & ASSOCIATES MECHANICAL, L.P., AND MIKE TREVINO, SR.

Judgment entered this 9th day of April, 2013.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE