**Reversed and Remanded and Opinion filed January 15, 2014**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-00489-CV

### BARRY STUART AND ZAC STUART, Appellants
### V.
### SUMMERS GROUP, INC., F/K/A SUMMERS ELECTRIC AND D/B/A REXEL, Appellee

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-11-07037-A**

## MEMORANDUM OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Bridges

Appellants Barry Stuart and Zac Stuart appeal from the trial court's grant of summary judgment in favor of appellee Summers Group, Inc., f/k/a Summers Electric and d/b/a Rexel. In three issues, appellants allege the trial court erred in: (1) overruling their objections to the use of appellee's first amended petition as competent summary judgment evidence; (2) overruling their objections to the affidavit of James R. Pike as competent summary judgment evidence; and (3) granting appellee's amended traditional and no-evidence motion for summary judgment when fact issues presented in appellants' response to the motion precluded summary judgment. We reverse and remand.

## Background

On or about April 3, 1986, Stuart Electric, Inc. ("SEI") signed a written credit application (the "Agreement") with Summers Electric Company ("Summers"). Under the terms of the Agreement, Summers extended credit to SEI in exchange for an individual and personal guaranty of Barry Stuart and Zac Stuart to Summers "or their assigns [of] the payment of such sum of money as may at anytime hereafter become due to Summers [], from [SEI] for goods, wares, merchandise and services sold to [SEI]." Both Barry Stuart and Zac Stuart signed the Agreement.

On December 31, 1989, Summers Group, Inc. acquired the assets of Summers, including all accounts receivable, liens, security interest instruments, agreements, or documents evidencing or securing same. A year later, Summers was dissolved. On December 17, 1993, Rexel, Inc. ("Rexel") acquired the stock of Summers Group, Inc., which included the business formerly conducted by Summers. On June 9, 1999, Summers Group, Inc. filed an assumed name certificate with the secretary of state, reflecting the assumed name of "Rexel Summers." In December 2007, Summers Group, Inc. filed an assumed name certificate, reflecting its assumed name of "Rexel."

On March 12, 2008, Barry and Zac Stuart entered into a purchase agreement, whereby they agreed to sell all of their outstanding stock and assets in SEI to Brad Chandler, Lloyd Moody, and Russell Atwood (collectively referred to as the "SEI Buyers"). In May of 2008, the SEI Buyers and Zac and Barry Stuart entered into a buy sell agreement, documenting the terms of the purchase of SEI by the SEI Buyers. The SEI Buyers also executed a promissory note in favor of Zac and Barry Stuart for the purchase of SEI.

Shortly after Zac and Barry Stuart sold SEI, they contacted Rexel, notifying it of the sale of SEI to the SEI Buyers. Both Zac and Barry Stuart testified, through affidavit, that Rexel

confirmed it had removed them from the SEI account and they would no longer be responsible for any purchases made on that account and had no further liability to Rexel for the SEI account. In approximately 2011, Barry Stuart opened a new account with Rexel separate and apart from SEI for his own use. Barry Stuart testified, through affidavit, he again confirmed with Rexel he had no responsibility for any activity or charges on the SEI account.

After the sale of SEI to the SEI Buyers, from April 2010 through April 2011, SEI ordered materials from Rexel on the SEI account. SEI accepted the materials and agreed to pay Rexel for them. However, despite written demand, SEI failed to pay for the materials ordered under the SEI account. Rexel contends the personal guaranty in the Agreement, signed by Zac and Barry Stuart, has remained in effect since it was signed in 1986 and demanded payment on the SEI account from Zac and Barry Stuart. Zac and Barry Stuart refused to pay the SEI invoices, claiming they were no longer liable under the guaranty for the SEI account.

On June 6, 2011, Summers Group, Inc. d/b/a Summers filed suit against SEI, Zac Stuart and Barry Stuart for unpaid account, breach of contract, quantum meruit and breach of guaranty against Zac and Barry Stuart, and sought its attorney's fees. Summers Group, Inc. f/k/a Summers and d/b/a Rexel filed its first amended petition and amended traditional and no-evidence motion for summary judgment on February 16, 2012. As part of their response, Zac and Barry Stuart filed their own affidavits and the affidavit of Robert Buchholz[1] as evidentiary support. Rexel filed its objections and motion to strike the affidavits and attached exhibits.

The trial court granted Rexel's amended motion for summary judgment on March 16, 2012. Rexel filed an amended motion for default judgment against SEI on March 20, 2012.[2] The trial court signed the final judgment against Zac Stuart, Barry Stuart, and SEI. Before its

_____

[1] Buchholz testified as to attorney's fees.

[2] The record before us does not contain an answer filed by SEI.

plenary power had expired, the trial court also overruled Rexel's objections to the affidavits of Zac Stuart, Barry Stuart and Robert Buchholz.

**Analysis**

*Objections to Affidavits*

We begin our discussion with Rexel's contention  the trial court abused its discretion by overruling its objections to the affidavits of Zac Stuart and Barry Stuart and by denying its motion to strike said affidavits. We review a trial court's decision to overrule objections to an affidavit under an abuse of discretion standard. *See Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527-28 (Tex. 2000). Because only the objections to, and motion to strike, the affidavits of Zac Stuart and Barry Stuart are relevant to this appeal, we do not consider Rexel's objections to the affidavit of Robert Buchholz here.

Rexel first contends the affidavits of Zac and Barry Stuart are not competent evidence because they are interested witnesses and their affidavits do not meet the requirements of an interested witness affidavit. To support summary judgment, an interested witness affidavit must be "clear, positive, and direct, otherwise credible, free from contradictions or inconsistencies, and could have been readily controverted." TEX. R. CIV. P. 166a(c); *Trico Tech. Corp. v. Montiel*, 949 S.W.2d 308, 310 (Tex. 1997).

In particular, Rexel objected to paragraph 7 in both of the affidavits, alleging they contained statements that were conclusory, speculative, vague, self-serving and not readily controverted. The objected-to paragraph of Zac Stuart's affidavit provided as follows:

> Shortly after Stuart Electric, Inc. was sold my brother Barry Stuart and I contacted "Rexel" which was a company that we purchased electrical supplies from. In our conversation with Rexel's employees my brother and I informed them that we had sold Stuart Electric, Inc. We talked with the credit manager, Troy Saddler, at Rexel and he was specifically informed that we had sold the company to Brad Chandler, Lloyd Moody and Bill Atwood. Bill Atwood was an employee of Rexel at that time. We further spoke to the Branch Manager of Rexel, who we previously mistakenly identified as Mike Hill, and informed him that we had sold

–4–

our interest in Stuart Electric and were no longer involved in the business. Rexel, through its employees informed us that they had removed Barry Stuart and I from the Stuart Electric, Inc. account and that we would no longer be responsible for any purchases made on that account and that we had no further liability under the old account with Stuart Electric, Inc. I relied on this representation from Rexel that I had no further liability for the Stuart Electric, Inc. account and confirmed that I had been removed from the account and was no longer authorized to make any purchases or transactions on that account. All charges on the account that were made during my time as a part owner of Stuart Electric, Inc., have been in all things paid.

Paragraph 7 of Barry Stuart's affidavit provided:

Within one week after Stuart Electric, lnc. was sold my brother Zac Stuart and I contacted "Rexel" which was a company that we purchased electrical supplies from. In our conversation with Rexel's employees, specifically Troy Saddler, Russell Atwood one of the purchasers of Stuart Electric, Inc. and an employee at that time of Rexel, and branch manager Randy Wood of Rexel, my brother and I informed them that we had sold Stuart Electric. I specifically talked with the credit manager, Troy Saddler, at Rexel and he was specifically informed that we had sold the company to Brad Chandler, Lloyd Moody and Bill Atwood. Bill Atwood was an employee of Rexel. I further spoke to the Branch Manager of Rexel, Randy Wood, and informed him that my brother and I had sold our interest in Stuart Electric and were no longer involved in the business. Rexel, through its employees including Troy Saddler and Randy Wood, informed us that they had removed Zac Stuart and I from the Stuart Electric account and would no longer be responsible for any purchases made on that account and that we had no further liability under the old account with Stuart and that we could no longer make any purchases on that account. I relied on this representation from Rexel that I had no further liability for the Stuart account and confirmed that I had been removed from the account and was no longer authorized to make any purchases or transactions on that account. All charges on the account that were made during my time as a part owner of Stuart Electric, Inc., have been in all things paid. In my previous affidavit I stated that Mike Hill was the branch manager of Rexel. Mr. Hill was present in the parking lot when I had a conversation with him. 1 was unclear of his status with Rexel at that time but I did have a conversation with him about the sale of Stuart Electric, Inc. I confused the time frame in my prior affidavit concerning Mr. Hill.

Along with these paragraphs, Rexel objected to Barry Stuart's statement in this affidavit that: "I again confirmed that I had no responsibility for any activity or charges on the prior account of Stuart Electric, Inc. with my salesman Jason Robbin, and that no more charges were to be made for which either I or my brother, Zac Stuart, would be responsible." Likewise, Rexel objected to Zac Stuart's statement in his affidavit that: "[M]y brother and I again confirmed that

we had no responsibility for any activity or charges on the prior account of Stuart Electric, Inc., and no more charges were to be made for which either I or my brother, Barry Stuart, would be responsible." With regard to both of these statements, Rexel argued they were "conclusory, not readily controvertible, vague and wholly self-serving to [Zac and Barry] Stuart" and that they failed "to establish a factual predicate for [their] personal knowledge."

We first note that "could have been readily controverted" does not mean that the summary judgment evidence could have been easily and conveniently rebutted, but rather indicates that the testimony could have been effectively countered by opposing evidence. *Trico Tech.*, 949 S.W.2d at 310 (citing *Casso v. Brand,* 776 S.W.2d 551, 558 (Tex. 1989)). Zac and Barry Stuart's affidavits could have been readily controverted if, in discovery, Rexel had inquired of its own employees regarding the representations made to Zac and Barry Stuart regarding the SEI account. In addition, although Zac and Barry Stuart are interested witnesses, we conclude their affidavits regarding their discussions with Rexel were clear, specific, consistent and uncontroverted. *See Fields v. Klatt Hardware & Lumber, Inc.*, 374 S.W.3d 543, 549 (Tex. App.—San Antonio 2012, no pet.). Rexel made no attempt to controvert the objected-to portions of the affidavits through deposition testimony, interrogatories, or other discovery.[3] Thus, we conclude the affidavits of Zac and Barry Stuart were competent summary judgment evidence. *See Trico Tech.*, 949 S.W.2d at 310.

Rexel also complains "the testimony that Stuart Electric was defunct or that [Zac and Barry Stuart] were not associated with the business after 2007 should not be considered as part of the record." However, this argument was not raised to the trial court, and we will not consider it

---

[3] The record contains the affidavits of Jonathan D. Plotkin, vice president, legal senior counsel, and assistant secretary for Rexel, and James R. Pike, legal credit manager for Rexel. In his affidavit, Plotkin states Mike Hill was not employed by Rexel as a "Branch Manager," and that Mike Hill left Rexel in 2000. However, neither affidavit addresses the other Rexel employees mentioned in the Stuart affidavits and the discussions referenced therein.

–6–

here.  *See* TEX. R. APP. P. 33.1; *McCain v. NME Hosps., Inc.*, 856 S.W.2d 751, 755 (Tex. App.—Dallas 1993, no writ) (discussing waiver of complaint when not raised in trial court).

We overrule Rexel's contention that the trial court abused its discretion by overruling its objections to the affidavits of Zac Stuart and Barry Stuart and by denying its motion to strike the affidavits.  *See Allen*, 15 S.W.3d at 527-28.

### Summary Judgment

In three issues, Zac and Barry Stuart challenge the trial court's grant of Rexel's amended traditional and no-evidence motion for summary judgment.  Because it is dispositive, we start with their third issue: whether the trial court erred when fact issues raised in their response to the motion precluded the granting of summary judgment.

The standards for reviewing a traditional summary judgment are well established.  The party moving for summary judgment has the burden of showing no genuine issue of material fact exists and that it is entitled to judgment as a matter of law.  *See* TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex. 1985).  In deciding whether a disputed material fact issue exists, precluding summary judgment, evidence favorable to the non-movant will be taken as true.  *Nixon,* 690 S.W.2d at 548–49.  Further, every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.  *Id.*  A motion for summary judgment must expressly present the grounds upon which it is made and must stand or fall on those grounds alone.  *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex. 1993); *Espalin v. Children's Med. Ctr. of Dallas,* 27 S.W.3d 675, 688 (Tex. App.—Dallas 2000, no pet.).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict.  *See* TEX. R. CIV. P. 166a(i); *Gen. Mills Rests., Inc. v. Tex. Wings, Inc.,* 12 S.W.3d 827, 832–33 (Tex. App.—Dallas 2000, no pet.).  Thus, we must

determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *Gen. Mills,* 12 S.W.3d at 833. When analyzing no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant. *Id.*

If the defendant relies upon an affirmative defense to defeat summary judgment, he must come forward with evidence sufficient to raise a genuine issue of material fact on each element of the defense. *Sani v. Powell*, 153 S.W.3d 736, 740 (Tex. App. – Dallas 2005, pet. denied) (citing *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)).

In their brief on appeal, Zac and Barry Stuart argue they raised issues of fact to the trial court through their assertion of multiple affirmative defenses. In particular, we focus on the Stuarts's argument that their affidavits were sufficient to raise fact issues on each element of promissory estoppel and, therefore, summary judgment was improper.

Promissory estoppel can apply to a promise made outside a contract. *See Richter v. Wagner Oil Co.*, 90 S.W.3d 890, 899 (Tex. App.—San Antonio 2002, no pet.). The elements of promissory estoppel are: (1) a promise; (2) foreseeability of reliance thereon by the promisor, and (3) substantial reliance by the promise to his detriment. *See Trevino & Assoc. Mech., L.P. v. Frost Nat'l. Bank*, 400 S.W.3d 139, 146 (Tex. App.—Dallas 2013, no pet.) (citing *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983); *Fretz Constr. Co. v. S. Nat'l Bank of Houston*, 626 S.W.2d 478, 480 (Tex. 1981)).

As we have already noted, the affidavits of Zac and Barry Stuart are competent summary judgment evidence. In those affidavits, both Zac and Barry Stuart testified that a promise was made on behalf of Rexel, namely that Zac and Barry Stuart had been removed from the SEI account and would no longer be held liable for any purchases made on that account. It is reasonable to conclude their reliance would be foreseeable to Rexel, since Rexel allegedly made

the promises through its employees. Both Zac and Barry Stuart testified they relied on the representation from Rexel that they had no further liability for the SEI account and that they could no longer make purchases with that account. Reliance is further raised through their affidavit testimony that Barry Stuart later opened an account, separate and apart from the SEI account, so that he could make purchases from Rexel. Both Zac and Barry Stuart testified that, at the time Barry Stuart opened the new account, Rexel again represented they were no longer responsible for the SEI account. Their affidavits further state they have not made purchases under the SEI account in over four years, and they did not order or receive the electrical supplies for which Rexel now seeks payment.

As the reviewing court, we are to consider the evidence in the light most favorable to the nonmovant. *See Gen. Mills,* 12 S.W.3d at 833. We, therefore, conclude Zac and Barry Stuart presented evidence sufficient to raise a fact issue on each element of promissory estoppel, and we sustain appellant's third issue on appeal. *See English*, 660 S.W.2d at 524. Because summary judgment was improper, we reverse and remand the judgment of the trial court for further proceedings. *See Gen. Mills,* 12 S.W.3d at 833.


/David L. Bridges/  
DAVID L. BRIDGES  
120489F.P05                                          JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

BARRY STUART AND ZAC STUART,
Appellants

No. 05-12-00489-CV       V.

SUMMERS GROUP, INC., F/K/A
SUMMERS ELECTRIC AND D/B/A
REXEL, Appellee

On Appeal from the 14th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-11-07037-A.
Opinion delivered by Justice Bridges.
Justices Fillmore and Lewis participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and this cause is **REMANDED** to the trial court for further proceedings consistent
with this opinion.

It is **ORDERED** that appellants BARRY STUART AND ZAC STUART recover their
costs of this appeal from appellee SUMMERS GROUP, INC., F/K/A SUMMERS ELECTRIC
AND D/B/A REXEL.

Judgment entered January 15, 2014

/David L. Bridges/
DAVID L. BRIDGES
JUSTICE