**AFFIRMED; Opinion Filed December 21, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-14-00965-CV

### ALFONSO WILBURN AND DELORIS ANN WILBURN, Appellants
### V.
### VALLIANCE BANK AND COLEMAN & PATTERSON LLC, Appellees

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 11-14629**

## MEMORANDUM OPINION

Before Justices Francis, Evans, and Stoddart
Opinion by Justice Stoddart

Alfonso and Deloris Ann Wilburn appeal the trial court's adverse summary judgment

orders on their claims for breach of contract and fraud by nondisclosure against Valiance Bank.

In four issues, appellants argue: (1) there is a valid contract between the parties; (2) the contract

satisfies the statute of frauds; (3) the auctioneer had the actual and apparent authority to bind

Valliance; and (4) Valliance was not entitled to summary judgment on the Wilburns' claim for

fraud by nondisclosure. We affirm the trial court's judgment.

FACTUAL BACKGROUND

Valliance owned a piece of real property that it attempted to sell in a real estate auction

(the Property). Valliance and the auction company executed an Agreement to Conduct Auction

Sale (Agreement) that contained the auction terms. The Agreement provided a minimum

reserve price for the properties being auctioned and stated that "[u]nless high bid amount meets the minimum set reserve price, seller [Valliance] must accept, counter or reject the final high bid amount within 48 hours of the conclusion of the auction."

The Wilburns attended the auction where the Property was being sold. Mr. Wilburn executed a registration card in which he represented that "Buyer agrees that upon registration to bid that he/she has read and agrees to the terms and conditions of this sale." He also executed a Broker/Agent Registration card in which he agreed he had advised his client of the sale's terms and conditions. The terms and conditions of the auction included: (1) properties not identified as "absolute" "will be sold with a reserve and [are] subject to the Seller's confirmation"; (2) "Sale day announcements supersede written terms and conditions"; (3) "Sellers reserve the right to accept or reject any offers at their sole discretion, regardless of the manner in which they are received. . . . No offer shall be deemed fully accepted until the "Real Estate Auction Sales Contract" is signed by both parties"; (4) "If a high bid is not accepted by the seller, all earnest money will be promptly refunded"; and (5) "The Auctioneer is acting as the agent for Seller and has completed a separate agreement with the Seller." Appellees provided evidence that before the auction began, the auctioneer, acting as an agent for Valliance, announced all properties would be sold with a reserve and sales were subject to the seller's approval.

The Wilburns arrived late to the auction and after bidding had begun on the Property. Mrs. Wilburn testified about the auction as follows:

> Well, we ran in there. And there was [sic] some people sitting behind a desk with these pass [sic] giving you these sheets of paper to fill out if you were going to do an auction. By the time we filled this part out, we went - - we ran on in there to the auction. And we told somebody the property we was [sic] trying to auction on [sic], and they said: That's the that's - - that's the property they're bidding on now. So we just listened to the people that was [sic] bidding. And as they bid a number and - - you know, we - - we just kept going until they got to us. And then they pointed at us and said, "Sold."

After bidding for the Property was complete, the Wilburns received a document titled "Closing Instructions," which stated the Wilburns had the "winning bid for the property." Their instructions to complete the transaction included: "[t]his offer will be turned in to the bank for their approval" and "[o]nce the offer has been accepted by Valliance Bank, your closing process will begin." A form contract titled "Auction Real Estate Sales Contract" was attached to the Closing Instructions sheet. The Wilburns initialed and signed the Auction Real Estate Sales Contract; Valliance Bank did not. The Auctioneer signed the document to confirm it received the Wilburns' earnest money. Mrs. Wilburn testified they never received a document signed by Valliance.

It is uncontested the Wilburns submitted the highest bid for the Property, and their bid was below the reserve price set by Valliance. Ultimately, Valliance timely rejected the Wilburns' offer and returned the Wilburns' earnest money.

The Wilburns sued appellees for breach of contract, fraud by nondisclosure, and violations of the Texas Deceptive Trade Practices Act (DTPA). Valliance moved for traditional summary judgment on all claims asserted by the Wilburns. The trial court granted the motion as to the breach of contract claim only, but did not specify the grounds for granting the motion. Valliance renewed its motion for summary judgment, moving for traditional and no-evidence summary judgment on the Wilburns' claim for, among other things, fraud by nondisclosure. The trial court granted summary judgment on the fraud by nondisclosure claim and again did not specify the grounds for its ruling. The parties proceeded to a jury trial on the DTPA claim and the jury entered a take-nothing verdict in appellees' favor. This appeal followed.

**A.      Standard of Review**

We review the grant of summary judgment de novo.  *Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 607 (Tex. 2013), *cert. denied*, 135 S.Ct. 435 (2014).  The standards of review for traditional and no-evidence summary judgments are well known.  *See Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985).  With respect to a traditional motion for summary judgment, the movant has the burden to demonstrate that no genuine issue of material fact exists and judgment should be rendered as a matter of law.  TEX. R. CIV. P. 166a(c); *Nixon*, 690 S.W.2d at 548–49.  To defeat a no-evidence summary judgment, the nonmovant is required to produce more than a scintilla of probative evidence raising a genuine issue of material fact on each challenged element of its claim.  *Gish*, 286 S.W.3d at 310; *see also* TEX. R. CIV. P. 166a(i).

When reviewing both traditional and no-evidence summary judgments, we consider the evidence in the light most favorable to the nonmovant.  *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).  We credit evidence favorable to the nonmovant if a reasonable fact-finder could, and we disregard evidence contrary to the nonmovant unless a reasonable fact-finder could not.  *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009); *Gish*, 286 S.W.3d at 310.

If the trial court's order does not state the grounds on which it granted summary judgment, we will affirm if any of the theories advanced by the summary judgment movant are meritorious.  *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex. 1993).  When a party has moved for summary judgment on both traditional and no-evidence grounds, we typically first review the propriety of the summary judgment under the no-evidence standard.

*See* TEX. R. CIV. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *Rico v. L–3 Commc'ns Corp.*, 420 S.W.3d 431, 438–39 (Tex. App.—Dallas 2014, no pet.).

To obtain a reversal of a summary judgment, an appellant must attack every ground relied on for which summary judgment could have been granted. *Trevino Assocs. Mech., L.P. v. Frost Nat'l Bank*, 400 S.W.3d 139, 144 (Tex. App.—Dallas 2013, no pet.). If an appellant fails to challenge one of the grounds for summary judgment, an appellate court may affirm the summary judgment on that ground alone. *Id.*

**B.       Auctioneer's Actual and Apparent Authority**

The Wilburns assert the auctioneer had actual and apparent authority to act as Valliance's agent and bind the bank to sell the Property. Agency is a consensual relation between two parties "by which one party acts on behalf of the other, subject to the other's control." *Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, 436 S.W.3d 835, 841 (Tex. App.—Dallas 2014, no pet.) (quoting *Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782–83 (Tex. App.—Houston [1st Dist.] 2011, no pet.)). A principal is liable for the acts of another acting as its agent only when the agent has actual or apparent authority to do those acts or when the principal ratifies those acts. *Id.* An agent's authority to act on behalf of a principal depends on words or conduct by the principal either to the agent (actual authority) or to a third party (apparent authority). *Id.* at 842. An agent cannot bind a principal absent either actual authority or apparent authority. *Sanders v. Total Heat & Air, Inc.*, 248 S.W.3d 907, 913 (Tex. App.—Dallas 2008, no pet.).

*1.       Actual Authority*

Actual authority is created through conduct of the principal communicated to the agent. *Gaines v. Kelly*, 235 S.W.3d 179, 182 (Tex. 2007); *Sanders*, 248 S.W.3d at 913. An agency relationship is created when the principal: (1) intentionally confers authority on the agent; (2)

intentionally allows the agent to believe that he has authority; or (3) allows the agent to believe that he has authority to act by lack of due care. *Sanders*, 248 S.W.3d at 913. Actual authority may be express or implied. *Crooks v. M1 Real Estate Partners, Ltd.*, 238 S.W.3d 474, 483 (Tex. App.—Dallas 2007, pet. denied).

Express actual authority is delegated to an agent by words that expressly and directly authorize the agent to do an act or series of acts on behalf of the principal. *Id*. An agent has express actual authority when the principal makes it clear to the agent that it wants certain acts to be done. *Id*. Implied actual authority is the authority to do whatever is reasonably necessary and proper to carry out the agent's express powers. *Id*. An agent who does not have express actual authority cannot have implied actual authority. *Id*.

### 2. *Apparent Authority*

Apparent authority is based on the doctrine of estoppel arising from the conduct of the principal communicated to a third party. *Gaines*, 235 S.W.3d at 182; *Sanders*, 248 S.W.3d at 913. Apparent authority arises through acts of participation, knowledge, or acquiescence by the principal that clothe the agent with the indicia of authority. *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998); *LandAmerica Commonwealth Title Co. v. Wido*, No. 05-14-00036-CV, 2015 WL 6545685, at *6 (Tex. App.—Dallas Oct. 29, 2015, no pet. h.). To determine an agent's apparent authority, a court examines the conduct of the principal and the reasonableness of the third party's assumptions about authority. *Gaines*, 235 S.W.3d at 183. One who seeks to bind a principal based on the apparent authority of its agent must show that the principal acted in such a way that a reasonably prudent person would believe the agent had authority to act as he did. *NationsBank, N.A. v. Drilling*, 922 S.W.2d 950, 953 (Tex. 1996) (per curiam); *Wido*, 2015 WL 6545685, at *6. A court may consider only the conduct of the principal leading a third party

to believe that the agent has authority in determining whether an agent has apparent authority. *NationsBank*, 922 S.W.2d at 953; *Sanders*, 248 S.W.3d at 913.

3. *Analysis*

The auctioneer acted as Valliance's agent when auctioning the Property. However, Valliance argues the auctioneer did not have the actual or apparent authority to enter into a binding contract to sell the Property on Valliance's behalf.

The Agreement to Conduct Auction Sale stated each property being auctioned had a reserve price and "[u]nless high bid amount meets the minimum set reserve price, seller [Valliance] must accept, counter or reject the final high bid amount within 48 hours of the conclusion of the auction." This directive gave the auctioneer the actual authority to sell a property if the high bid met the minimum reserve price, but not when the high bid failed to meet the reserve. In the event the high bid was below the reserve price, Valliance retained the authority to accept, counter, or reject the high bid amount; the auctioneer lacked the actual authority to sell the property for less than the reserve price.

There is no evidence that Valliance intentionally conferred authority on the auctioneer to sell all properties regardless of the bid price. Nor is there evidence Valliance intentionally allowed the auctioneer to believe it had the right to sell properties below the minimum reserve price or by want of due care allowed the auctioneer to believe he possessed the right to sell the properties at any price. *See Sanders*, 248 S.W.3d at 913. Rather, the terms of the Agreement specifically provided the auctioneer with actual authority to sell properties only when the highest bid met the reserve. The auctioneer had no actual authority to sell the properties when the reserve was not met.

It is uncontested that the Wilburns' bid for the Property did not meet the reserve price. Therefore, the auctioneer lacked the actual authority to bind Valliance to sell the Property to the Wilburns.

The auctioneer also did not have the apparent authority to bind Valliance to contracts to sell properties below the reserve price. The information conveyed to the Wilburns restricted the auctioneer's authority to collecting bids unless the reserve prices were met. At the beginning of the auction, the auctioneer announced its authority was limited: all properties were being sold with a reserve and were subject to the bank's approval. Additionally, showing the Wilburns knew the auctioneer's authority was limited, Mr. Wilburn executed the registration card in which he represented that "Buyer agrees that upon registration to bid that he/she has read and agrees to the terms and conditions of this sale." He also executed a Broker/Agent Registration card in which he represented: "I have advised my client of the "Terms and Conditions" of this sale." The terms and conditions of the auction sale included properties not identified as "absolute" "will be sold with a reserve and is subject to the Seller's confirmation"; "Sellers reserve the right to accept or reject any offers at their sole discretion, regardless of the manner in which they are received. . . . No offer shall be deemed fully accepted until the "Real Estate Auction Sales Contract" is signed by both parties"; "If a high bid is not accepted by the seller, all earnest money will be promptly refunded"; and "The Auctioneer is acting as the agent for Seller and has completed a separate agreement with the Seller." By signing these cards, the Wilburns acknowledged the properties were being sold with a reserve, Valliance retained the right to accept or reject any offers, and no offer would be deemed accepted until the Real Estate Auction Sales Contract was signed by both parties. The limits of the auctioneer's apparent authority were reiterated in the Closing Instructions, which included statements that their "offer will be turned

–8–

in to the bank for their approval" and "[o]nce the offer has been accepted by Valliance Bank, your closing process will begin."

None of the bank's actions or inactions clothed the auctioneer with the indicia of authority to sell the Property at a price below the reserve without Valliance's consent. *See Morris*, 981 S.W.2d at 672; *Wido*, 2015 WL 6545685, at *6. After reviewing the bank's conduct, it would not have been reasonable for the Wilburns to conclude the auctioneer had the right to sell the Property for a price below the reserve. *See Gaines*, 235 S.W.3d at 183. The only reasonable conclusion the Wilburns—or any other third party—could have drawn from the bank's representations is that the auctioneer did not have the authority to sell the Property to the Wilburns for a price less than the reserve amount. Therefore, even if the auctioneer announced "sold" at the end of the bidding for the Property, the Property was not sold to the Wilburns because the auctioneer lacked the actual or apparent authority to sell the Property at a price below the reserve.

### 4.    Conclusion

We overrule the Wilburns' third issue.

## C.    Existence of a Contract

In their first issue, the Wilburns argue the trial court erred by concluding no valid contract was created between the Wilburns and Valliance. The Wilburns assert a contract was formed when the auction ended and they were the highest bidder or, alternatively, their submission of the Auction Real Estate Sales Contract to Valliance was a counter-offer that Valliance accepted.

In its motion for summary judgment, Valliance argued the parties never formed a contract because Valliance never accepted the Wilburns' offer and there was no meeting of the minds. The elements required for the formation of a valid contract are: (1) an offer; (2) acceptance in

strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Levetz v. Sutton*, 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, pet. denied) (citing *Cessna Aircraft Co. v. Aircraft Network, L.L.C.*, 213 S.W.3d 455, 465 (Tex. App.—Dallas 2006, pet. denied)).

We concluded the auctioneer lacked authority to bind Valliance to any bids below the Property's reserve price, and, as a result, could not have created a contract between Valliance and the Wilburns at any time. Therefore, the trial court did not err by concluding no contract was formed when the bidding ended, even if the auctioneer announced "sold." The Wilburns' first argument fails.

Considering the Wilburn's second argument, even if the Wilburns' tender of the form Real Estate Auction Sales Contract is an offer, Valliance never accepted that offer. Valliance never signed the Real Estate Auction Sales Contract. Rather, the signature block for the bank is empty. One of the bank's terms of the auction was that no offer would be accepted until the Real Estate Auction Sales Contract is signed by both parties, which never occurred. The Wilburns' second argument fails.

Because no contract was formed between the parties, the Wilburns could not prevail on their breach of contract claim. *See Woodhaven Partners, Ltd. v. Shamoun & Norman, L.L.P.*, 422 S.W.3d 821, 837 (Tex. App.—Dallas 2014, no pet.) (listing elements of breach of contract claim). Therefore, we conclude the trial court did not err by granting Valliance's motion for summary judgment on the claim for breach of contract. We overrule the Wilburns' first issue.

In light of our conclusion that the parties did not enter into a contract, we need not consider the Wilburns' second issue arguing the contract satisfies the statute of frauds. *See* TEX. R. APP. P. 47.1.

–10–

**D.     Fraud by nondisclosure**

In their fourth issue, the Wilburns argue the trial court erred by granting Valliance's motion for summary judgment on their claim for fraud by nondisclosure.  To establish fraud by nondisclosure, a plaintiff must prove (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when she had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge.  *Blankinship v. Brown*, 399 S.W.3d 303, 308 (Tex. App.—Dallas 2013, pet. denied).

In its no-evidence motion, Valliance challenged each element except for materiality, reliance, and injury.  In its traditional motion, Valliance asserted the evidence negated three elements of the cause of action: failure to disclose material facts, knowledge the Wilburns were ignorant of the facts and did not have an equal opportunity to discover the facts; and the Wilburns suffered some legally recognizable measure of damages as a result of acting without that knowledge.

On appeal, the Wilburns only challenge the trial court's summary judgment on three grounds: (1) Valliance had a duty to disclose; (2) Valliance failed to disclose the required information; and (3) their fraud damages are valid.  The Wilburns do not argue or point to any evidence in the record that Valliance knew the Wilburns were ignorant of the facts and the Wilburns did not have an equal opportunity to discover the facts; Valliance was deliberately silent despite a duty to speak; and by failing to disclose information, Valliance intended to induce the Wilburns to take some action or refrain from acting.  Because the Wilburns have

–11–

failed to attack every ground relied on for which summary judgment could have been granted, we conclude they failed to meet their burden on appeal. *See Napier*, 461 S.W.2d at 121; *Frost Nat'l Bank*, 400 S.W.3d at 144. We overrule the Wilburns' fourth issue.

CONCLUSION

We affirm the trial court's judgment.

/Craig Stoddart/
CRAIG STODDART
JUSTICE

140965F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ALFONSO WILBURN AND DELORIS
ANN WILBURN, Appellants

No. 05-14-00965-CV        V.

VALLIANCE BANK AND COLEMAN &
PATTERSON LLC, Appellees

On Appeal from the 116th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. 11-14629.
Opinion delivered by Justice Stoddart.
Justices Francis and Evans participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 21st day of December, 2015.